BANK OF SOUTHEASTERN CONNECTICUT *v.*
NAZARKO REALTY GROUP ET AL.
(AC 17261)

Foti, Spear and Dupont, Js.

Argued May 4—officially released July 21, 1998

*Michael Nazarko*, pro se, with whom was *Thomas Nazarko*, pro se, for the appellants (named defendant et al.).

*Michael W. Sheehan*, for the appellee (plaintiff).

FOTI, J. The defendants[1] appeal from the trial court's decision rendering a deficiency judgment in favor of the plaintiff.[2] The defendants claim that the trial court improperly (1) refused to consider evidence of a subdivision performance bond, (2) refused to apply the lot method of appraisal and (3) applied the discounted cash flow single purchaser method of valuation. We reverse the judgment of the trial court.

The following facts are relevant to this appeal. On October 4, 1991, the defendants executed a promissory note in favor of the plaintiff in the amount of $480,000. The note was secured by an open ended mortgage on property located in the town of North Stonington known as the Mains Crossing subdivision. On December 16, 1996, the parties agreed that a judgment of strict foreclosure should enter in favor of the plaintiff with a law day of January 21, 1997, provided that the value of the foreclosed property could be contested at a later date. The trial court, *Hendel, J.*, rendered judgment[3] and set the law day as agreed. Title to the foreclosed property vested in the plaintiff on January 24, 1997.

On May 15, 1997, an evidentiary hearing was commenced before a judge trial referee, *Hon. D. Michael*

---

[1] The defendants are Nazarko Realty Group, a partnership, and Michael Nazarko and Thomas Nazarko.

[2] The plaintiff Bank of Southeastern Connecticut merged with and became known as The Norwich Savings Society and subsequently merged with and is presently known as People's Bank.

[3] The debt was found to be $482,341.63. The trial court also awarded attorney's fees of $2500, a title search fee of $150 and an appraisal fee of $1075.

*Hurley*, to determine the amount of any deficiency judgment. The trial court set the value of the property at $118,000 and rendered a $400,107.24 deficiency judgment for the plaintiff. On June 2, 1997, the defendants appealed from the trial court's judgment.

The defendants first claim that the trial court improperly refused to consider evidence of a subdivision performance bond in determining the value of the property. Specifically, the defendants argue that the trial court improperly determined that the bond was not relevant to the court's valuation of the property and, therefore, refused to consider such evidence. We agree.

The following facts are relevant to our resolution of this claim. The property subject to valuation consists of a total land area of 34.84 acres. It is subdivided into sixteen lots with 4.19 acres designated as open space. On February 27, 1992, the subdivision was approved by the North Stonington planning and zoning commission.[4] On May 19, 1994, one lot was sold. On the date title vested in the plaintiff, a subdivision performance bond in the amount of $410,000 was in effect, having been obtained by the defendants in September, 1993.[5] At the hearing on the plaintiff's motion for a deficiency judgment, the defendants attempted to demonstrate that the bond was relevant to the valuation of the property

[4] The trial court's decision was based in part on its finding that no lots were sold from 1989 to February, 1992. No lots could have been sold before February 27, 1992, however, as the subdivision was not approved until that date.

[5] General Statutes § 8-25 (a) provides in relevant part: "The [planning and zoning] commission may . . . prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided and, in lieu of the completion of such work and installations previous to the final approval of a [subdivision] plan, the commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. . . ."

because General Statutes § 8-26c (c)[6] required the town to call the bond to the extent necessary to provide a road to service the lot that had been sold in 1994. The defendants argued that if this road was provided, then two other lots would, by necessity, also have road frontage, thereby increasing the fair market value of the property.

During the evidentiary hearing on the plaintiff's motion for a deficiency judgment, the trial court refused to consider evidence of the subdivision performance bond.[7] Instead, the court based its valuation of the property on its finding that no improvements were made to the subdivision after it was approved by the North Stonington planning and zoning commission. The court stated that "[n]o improvements were made. Nothing was done. This certainly doesn't suggest . . . an active market in which people were flocking to buy this property or to bid on those lots." In addition, the court commented on factors that might cause a decrease in the market value of the property, including "the casino," "traffic" and "whether or not [an amusement park] would be approved." The trial court would not permit the defendant Michael Nazarko to testify as to the value

---

[6] General Statutes § 8-26c (c) provides in relevant part: "If lots have been conveyed [within five years after the approval of the subdivision plan] or any extension thereof, the municipality *shall* call the bond or other surety on said subdivision to the extent necessary to complete the bonded improvements and utilities required to service those lots. . . ." (Emphasis added.)

[7] The following colloquy took place between the trial court and the attorneys.

"[Plaintiff's Counsel]: Basically, what they're doing is [that] they're building a road and selling off lots as they go along there. The issue is the value on January 24, Your Honor.

"[Defense Counsel]: I agree. I couldn't agree more. But as of January 24, there was a bond in place that their monies—

"The Court: You're persisting to argue about a matter that I told you that I don't see that it has any relevance.

"[Defense Counsel]: Very well.

"The Court: It just doesn't help. I'm not looking at that issue.

"[Defense Counsel]: Okay."

of the property because he was not an expert or an appraiser.[8]

When considering a motion for a deficiency judgment, the trial court may make an independent determination as to the valuation of the property. See *Farmers & Mechanics Bank* v. *Kneller*, 40 Conn. App. 115, 130, 670 A.2d 324 (1996). Our Supreme Court has held that, in a deficiency judgment proceeding, "[t]he determination of [a property's] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. *Appeal of Cohen*, 117 Conn. 75, 85, 166 Atl. 747 [1933]. *Lomas & Nettleton Co.* v. *Waterbury*, 122 Conn. 228, 233, 188 A. 433 (1936). *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 183, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). [T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is *privileged* to adopt whatever testimony he reasonably believes to be *credible. . . .* Id. When confronted with conflicting evidence as to valuation the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value. *New Haven*

---

[8] The trial court also refused to allow defense counsel to make an offer of proof. The court stated that "[t]his is not relevant. . . . You may not make an offer of proof. . . . This isn't the sort of thing [where] an offer of proof is appropriate."

Our Supreme Court has held that a party, "although no qualification other than his ownership is shown, is competent to testify as to the value of his . . . real property. *Lovejoy* v. *Darien*, 131 Conn. 533, 536, 41 A.2d 98 [1945]." (Citation omitted.) *Anderson* v. *Zweigbaum*, 150 Conn. 478, 483 n.1, 191 A.2d 133 (1963); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.15.3 (h), p. 171 (lay opinion may properly be admitted on reasonable value of own property).

*Savings Bank* v. *West Haven Sound Development*, [190 Conn. 60, 70, 459 A.2d 999 (1983)]; *Bennett* v. *New Haven Redevelopment Agency*, 148 Conn. 513, 515–16, 172 A.2d 612 (1961); see also *Whitney Center, Inc.* v. *Hamden*, [4 Conn. App. 426, 429, 494 A.2d 624 (1985)]." (Emphasis in original; internal quotation marks omitted.) *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 451–52, 582 A.2d 182 (1990).

"In determining valuation pursuant to [General Statutes] § 49-14,[9] the trier, as in other areas of the law, is 'not bound by the opinion of the expert witnesses . . . .' *Birgel* v. *Heintz*, 163 Conn. 23, 30, 301 A.2d 249 (1972). . . . 'The evaluation of testimony is the sole province of the trier of fact. We do not retry the case. The conclusion of the trial court must stand unless there was an error of law or a legal or logical inconsistency with the facts found.' . . . *Maresca* v. *Allen*, 181 Conn. 521, 523, 436 A.2d 14 (1980). We will disturb the trial court's determination of valuation, therefore, only when it appears on the record before us that the court 'misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was [its] duty to regard.' " (Citation omitted.) *New Haven Savings Bank* v. *West Haven Sound Development*, supra, 190 Conn. 69–70.

Our review of the record discloses that the trial court did not consider the defendants' evidence regarding the

---

[9] General Statutes § 49-14 (a) provides: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

existence of a subdivision performance bond. The trial court concluded that the bond was not relevant to the issue of the valuation of the property and, therefore, refused to consider it.[10] Because the trial court refused to consider the defendants' evidence regarding the effect of the bond on the valuation of the property, it could not exercise its discretion regarding what weight, if any, should be accorded the evidence. "[I]n determining value, the trier is under a legal compulsion to consider everything that might legitimately affect value." *Uniroyal, Inc.* v. *Board of Tax Review*, 174 Conn. 380, 390, 389 A.2d 734 (1978). On the date that title to the property vested in the plaintiff, a $410,000 performance bond was in existence. The purpose of the bond was to provide for the construction of roads to service the lots contained in the subdivision. Pursuant to § 8-26c (c), the town of North Stonington was required to call the bond "to the extent necessary to complete the bonded improvements and utilities required to serve" the lot that had been sold in 1994. Clearly, the construction of a road would have a positive impact on the value of the property. The trial court's failure to consider relevant and material evidence affecting the fair market value of the property requires a new deficiency hearing. See *Grossomanides* v. *Wethersfield*, 33 Conn. App. 511, 516–17, 636 A.2d 867 (1994).

Having heard oral arguments and reviewed the record, transcripts and briefs, we conclude that the remaining issues raised by the defendants are without merit.

The deficiency judgment is reversed and the case is remanded for a new deficiency hearing.

In this opinion the other judges concurred.

---

[10] See footnote 7.