# TOWN OF SOUTHINGTON *v.* COMMERCIAL UNION INSURANCE COMPANY
## (AC 18088)

Landau, Schaller and Dupont, Js.

Argued April 27—officially released August 3, 1999

*Bradford R. Carver*, with whom, on the brief, were *Adam G. Cohen* and *James J. Mercier*, for the appellant (defendant).

*Marjorie S. Wilder*, with whom, on the brief, were *Thomas A. Rouse* and *Talbot A. Welles*, for the appellee (plaintiff).

### Opinion

LANDAU, J. The defendant, Commercial Union Insurance Company, appeals from the judgment, rendered

after a trial to the court, in favor of the plaintiff, the town of Southington (town), enforcing a subdivision bond provided by the defendant as surety. The issue that is dispositive of the defendant's appeal is its claim that a surety's liability is limited to the cost of improvements necessary to provide services to subdivision lots conveyed prior to the expiration of the approval of the subdivision application. Because General Statutes § 8-26c (c)[1] limits a surety's liability to the cost of improvements necessary to service subdivision lots *conveyed* prior to the expiration of the approval of the subdivision application, we need not address the remainder of the

[1] General Statutes § 8-26c provides in relevant part: "(a) Any person, firm or corporation making any subdivision of land, except as provided in section 8-26g, shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision; the commission's endorsement of approval on the plan shall state the date on which such five-year period expires.

"(b) The subdivider or his successor in interest may apply for and the commission may grant one or more extensions of the time to complete all or part of the work in connection with such subdivision, provided the time for all extensions under this subsection shall not exceed ten years from the date the subdivision was approved. . . .

"(c) In the case of a subdivision plan approved on or after October 1, 1977, failure to complete all work within such five-year period or any extension thereof shall result in automatic expiration of the approval of such plan provided the commission shall file on the land records of the town in which such subdivision is located notice of such expiration and shall state such expiration on the subdivision plan on file in the office of the town clerk of such town, and *no additional lots in the subdivision shall be conveyed by the subdivider or his successor in interest as such subdivider except with approval by the commission of a new application for subdivision of the subject land. If lots have been conveyed during such five-year period or any extension thereof,* the municipality shall call the bond or other surety on said subdivision to the extent necessary to complete the bonded improvements and utilities required to serve those lots. . . .

"(d) Notwithstanding the provisions of this section, any subdivision approval made under this section on or before October 1, 1991, shall expire not more than seven years from the date of such approval and the commission may grant one or more extensions of time to complete all or part of the work in connection with such subdivision . . . ." (Emphasis added.)

defendant's claims.[2] We reverse the judgment of the trial court.

The following facts are relevant to this appeal. The town brought an action against the defendant for payment under a performance bond that the defendant had posted as surety. Michael J. Martinez was the president, sole director and sole shareholder of A.M.I. Industries, Inc. (AMI). In 1988, AMI applied to the town's planning and zoning commission (commission) for approval of an industrial subdivision in the town on Captain Lewis Drive. At the time, the real property was owned by Southington Land Associates, Inc. (SLA). On October 4, 1988, the commission approved the application subject to AMI's furnishing a $590,000 subdivision or public improvement bond.

On November 1, 1988, Martinez, as principal, and the defendant, as surety, executed a subdivision bond for the real property, and on February 9, 1989, SLA sold the property to MJM Land Investments, Inc. (MJM). Martinez was the president and sole stockholder of MJM. By April, 1995, Martinez, AMI and MJM had failed

---

[2] On appeal, the defendant also claimed that the trial court improperly (1) failed to find that the town violated its statutory and regulatory obligations thereby prejudicing the defendant and discharging its surety obligation because the trial court (a) did not conclude that the town, as a successor in interest, was required to provide a substitute bond, (b) did not conclude that the defendant was prejudiced by the town's failure to give it timely notice of the breach of contract; (2) failed to apply the law of the case to the count sounding in contract; (3) failed to conclude that the town had not met its burden of proof on the contract and negligence claims; and (4) awarded damages because it failed to conclude (a) that the town was required to complete the subdivision improvements before making a claim, (b) that the defendant was entitled to a refund for funds not expended by the town, (c) that the town's proof was insufficient in that it did not establish the date of the breach and the cost of completing the improvements on that date, (d) that for equitable reasons, pursuant to General Statutes § 52-238 (a), no damages were due the town and (e) that the town's evidence of the cost of completing the improvements was speculative.

to complete the improvements required under the subdivision approval. The town informed the defendant[3] that the subdivision had not been completed and that if it was not completed by October 3, 1995, the town would have to call the bond. Martinez declared personal bankruptcy, and the town purchased the real property in a foreclosure auction on June 27, 1995. None of the lots in the subdivision was sold prior to the expiration of the subdivision application.[4]

When the defendant refused to pay the money that the town claimed under the bond, the town commenced suit alleging, in its amended complaint, breach of contract and negligence and, in the alternative, promissory estoppel and identity/unity of interest, seeking damages of $175,000 to complete the subdivision improvements. The trial court rendered judgment in favor of the town on the breach of contract and negligence counts of the complaint. Although the defendant claimed that it was not obligated to make any payments under the bond because the bond named Martinez, not AMI, as principal, the trial court, after noting that the defendant knew, reading the bond and application together, that Martinez was operating his affairs through AMI, concluded that the defendant could not argue reasonably that it was unaware of the risk it undertook or that it did not understand that it was dealing with AMI. Assuming that AMI, not Martinez, should have been named as the principal under the bond, the trial court concluded that the defendant was negligent in failing to issue the bond properly.

On appeal, the defendant maintains that after the subdivision approval expired, the town, as successor

---

[3] In 1991, ITT Hartford began to acquire and service the defendant's surety bond business and is now the real party in interest.

[4] The subdivision application was approved on October 4, 1988. Pursuant to § 8-26c (d), the subdivision application expired not more than seven years from the date of the approval, i.e., October 3, 1995.

in interest, was now a developer and was thus required under § 8-26c (c) to submit a new subdivision application before selling any lots. Consequently, if the town was required to submit a new application, it was also required to provide a bond to ensure completion of the improvements. The defendant claims that it was prejudiced by the town's failure to submit a new application under § 8-26c and that it was, therefore, discharged of its obligation under the bond. The defendant also claims that because there is no evidence that AMI assigned its interest in the subdivision to Martinez, the trial court improperly determined that the defendant had breached the terms of the bond. Additionally, the defendant asserts that under town regulation § 4-08.1, it is the town's obligation to ensure that the bond is properly written and, therefore, it was the town that was negligent in not discovering that the bond improperly named Martinez, not AMI, as principal. Although the defendant raises a plethora of issues to be decided on appeal, one issue is dispositive, i.e., whether the defendant's surety liability was limited to the cost of improvements necessary to provide services to lots conveyed prior to the time that the subdivision approval expired.

"When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997). "Ordinarily, the construction and interpretation of a statute is a question of law for the courts . . . ." (Internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994). Here, our review is plenary because we must decide a

question of law, namely, the construction and interpretation of a statute. All of the parties in the case agree that the defendant's liability, if any, rests on § 8-26c.[5]

In construing § 8-26c, "we must start with the language employed by the legislature. *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 756, 601 A.2d 1005 (1992). Generally, when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). Further, we must interpret a statute according to its plain and ordinary meaning. *Mazur* v. *Blum*, 184 Conn. 116, 118, 441 A.2d 65 (1981)." (Internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 508.

Considering the fact that, as of the date the subdivision approval lapsed, no lots in the subdivision had been conveyed, we turn to the relevant language of § 8-26c (c): "*If lots have been conveyed* during such five-year period or any extension thereof, the municipality shall call the bond or other surety on said subdivision *to the extent necessary* to complete the bonded improvements and utilities required *to serve those lots.* . . ." (Emphasis added.) A municipality is required to call the bond to the extent necessary to complete the improvements required to serve lots or a lot already sold. See *Bank of Southeastern Connecticut* v. *Nazarko Realty Group*, 49 Conn. App. 452, 458, 714 A.2d 722 (1998). Although the town suggests that the statute is

---

[5] The town points us to § 8-26c (d) for instruction rather than § 8-26c (c). Section 8-26c (c) is the enforcement provision of the subdivision statute that mandates what happens if improvements are not completed. Section 8-26c (d) is a provision added in 1991 that allows for extensions of existing subdivision approvals. Stated simply, subsections (c) and (d) work in conjunction with one another; they are not mutually exclusive.

subject to interpretation,[6] the language is unambiguous. If subdivision improvements are not completed, the town may require that the surety complete the improvements "to the extent necessary . . . to serve [conveyed] lots." Here, because no lots in the subdivision were conveyed, no improvements were required.

"The basic purpose of performance bonds is not to punish the developer for failure to make the required improvements, or to unduly benefit a local government, but to assure those who purchase homes in a new subdivision that they will receive the public improvements that were a large part of the inducement to purchase lots and/or homes in that development." R. Yearwood, "Performance Bonding for Subdivision Improvements," 46 J. Urban L. 67, 68 (1968).

The words of our statute assure subdivision owners that they will be provided with necessary services without demanding the completion of an entire venture. Because the owner of the property conveyed no subdivision lots that would require the completion of public improvements covered by the bond, the defendant has incurred no liability to the town. As a matter of law, the town's request of the surety was inappropriate, and the trial court's conclusion was improper.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.

---

[6] The town argues that "the statute does not state that a municipality can *only* call a bond when lots have been conveyed to a third party. The statute's plain meaning simply imposes an obligation upon a municipality to call the bond in case lots have been conveyed; it does not preclude calling the bond if lots were not conveyed." (Emphasis in original.) This argument arises from a tortured reading of the statutory language.