TOWN OF SOUTHINGTON *v.* COMMERCIAL
UNION INSURANCE COMPANY
(SC 16194)

McDonald, C. J., and Borden, Norcott, Palmer and Sullivan, Js.

Argued April 25—officially released August 22, 2000

*Marjorie S. Wilder*, with whom, on the brief, was *Thomas A. Rouse*, for the appellant (plaintiff).

*Bradford R. Carver*, with whom, on the brief, were *Adam G. Cohen*, pro hac vice, and *Joseph Yamin*, for the appellee (defendant).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether a municipality that has accepted a subdivision performance bond may enforce the provisions of the

bond pursuant to General Statutes §§ 8-25 and 8-26c (c),[1] if no lots in the subdivision have been conveyed

[1] General Statutes § 8-25 provides: "(a) No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. Any person, firm or corporation making any subdivision of land without the approval of the commission shall be fined not more than five hundred dollars for each lot sold or offered for sale or so subdivided. Any plan for subdivision shall, upon approval, or when taken as approved by reason of the failure of the commission to act, be filed or recorded by the applicant in the office of the town clerk within ninety days of the expiration of the appeal period under section 8-8, or in the case of an appeal, within ninety days of the termination of such appeal by dismissal, withdrawal or judgment in favor of the applicant but, if it is a plan for subdivision wholly or partially within a district, it shall be filed in the offices of both the district clerk and the town clerk, and any plan not so filed or recorded within the prescribed time shall become null and void, except that the commission may extend the time for such filing for two additional periods of ninety days and the plan shall remain valid until the expiration of such extended time. All such plans shall be delivered to the applicant for filing or recording not less than thirty days after the time for taking an appeal from the action of the commission has elapsed, and in the event of an appeal, not less than thirty days after the termination of such appeal by dismissal, withdrawal or judgment in favor of the applicant. No such plan shall be recorded or filed by the town clerk or district clerk or other officer authorized to record or file plans until its approval has been endorsed thereon by the chairman or secretary of the commission, and the filing or recording of a subdivision plan without such approval shall be void. Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. No such regulations shall become effective until after a public hearing, notice of the time, place and purpose of which shall be given by publication in a newspaper of general circulation in the municipality at least twice, at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days prior to the date of such hearing. Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provision shall be made for water, drainage and sewerage and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provision shall be made for protective flood control measures and that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of conservation and development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. Such regulations shall also provide that the commission may require the provision of open spaces, parks and playgrounds when, and in

prior to the lapse of the subdivision approval. The plaintiff claims that the Appellate Court improperly con-

places, deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. Such regulations may, with the approval of the commission, authorize the applicant to pay a fee to the municipality or pay a fee to the municipality and transfer land to the municipality in lieu of any requirement to provide open spaces. Such payment or combination of payment and the fair market value of land transferred shall be equal to not more than ten per cent of the fair market value of the land to be subdivided prior to the approval of the subdivision. The fair market value shall be determined by an appraiser jointly selected by the commission and the applicant. A fraction of such payment the numerator of which is one and the denominator of which is the number of approved parcels in the subdivision shall be made at the time of the sale of each approved parcel of land in the subdivision and placed in a fund in accordance with the provisions of section 8-25b. The open space requirements of this section shall not apply if the transfer of all land in a subdivision of less than five parcels is to a parent, child, brother, sister, grandparent, grandchild, aunt, uncle or first cousin for no consideration, or if the subdivision is to contain affordable housing, as defined in section 8-39a, equal to twenty per cent or more of the total housing to be constructed in such subdivision. Such regulations, on and after July 1, 1985, shall provide that proper provision be made for soil erosion and sediment control pursuant to section 22a-329. Such regulations shall not impose conditions and requirements on manufactured homes having as their narrowest dimension twenty-two feet or more and built in accordance with federal manufactured home construction and safety standards or on lots containing such manufactured homes which are substantially different from conditions and requirements imposed on single-family dwellings and lots containing single-family dwellings. Such regulations shall not impose conditions and requirements on developments to be occupied by manufactured homes having as their narrowest dimension twenty-two feet or more and built in accordance with federal manufactured home construction and safety standards which are substantially different from conditions and requirements imposed on multifamily dwellings, lots containing multifamily dwellings, cluster developments or planned unit developments. The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided and, in lieu of the completion of such work and installations previous to the final approval of a plan, the commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. Such regulations may provide, in lieu of the completion of the work and installations above referred to, previous to the final approval of a plan, for an assessment or other method whereby the municipality is put in an assured position to do such work and make such installations at

cluded that, pursuant to § 8-26c (c), a municipality may only call a subdivision performance bond if lots have

the expense of the owners of the property within the subdivision. Such regulations may provide that in lieu of either the completion of the work or the furnishing of a bond as provided in this section, the commission may authorize the filing of a plan with a conditional approval endorsed thereon. Such approval shall be conditioned on (1) the actual construction, maintenance and installation of any improvements or utilities prescribed by the commission or (2) the provision of a bond as provided in this section. Upon the occurrence of either of such events, the commission shall cause a final approval to be endorsed thereon in the manner provided by this section. Any such conditional approval shall lapse five years from the date it is granted, provided the applicant may apply for and the commission may, in its discretion, grant a renewal of such conditional approval for an additional period of five years at the end of any five-year period, except that the commission may, by regulation, provide for a shorter period of conditional approval or renewal of such approval. Any person, firm or corporation who, prior to such final approval, sells or offers for sale any lot subdivided pursuant to a conditional approval shall be fined not more than five hundred dollars for each lot sold or offered for sale.

"(b) The regulations adopted under subsection (a) of this section shall also encourage energy-efficient patterns of development and land use, the use of solar and other renewable forms of energy, and energy conservation. The regulations shall require any person submitting a plan for a subdivision to the commission under subsection (a) of this section to demonstrate to the commission that he has considered, in developing the plan, using passive solar energy techniques which would not significantly increase the cost of the housing to the buyer, after tax credits, subsidies and exemptions. As used in this subsection and section 8-2, passive solar energy techniques mean site design techniques which maximize solar heat gain, minimize heat loss and provide thermal storage within a building during the heating season and minimize heat gain and provide for natural ventilation during the cooling season. The site design techniques shall include, but not be limited to: (1) House orientation; (2) street and lot layout; (3) vegetation; (4) natural and man-made topographical features; and (5) protection of solar access within the development.

"(c) The regulations adopted under subsection (a) of this section, may, to the extent consistent with soil types, terrain, infrastructure capacity and the plan of development for the community, provide for cluster development, and may provide for incentives for cluster development such as density bonuses, or may require cluster development."

Although the legislature has amended § 8-25 several times since the subdivision application was filed in 1988, the statute remains substantively the same. Therefore, all references to § 8-25 are to the current revision of that statute.

General Statutes § 8-26c provides: "(a) Any person, firm or corporation

been conveyed prior to the expiration of the subdivision approval. We agree and, accordingly, we reverse the

making any subdivision of land, except as provided in section 8-26g, shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision; the commission's endorsement of approval on the plan shall state the date on which such five-year period expires.

"(b) The subdivider or his successor in interest may apply for and the commission may grant one or more extensions of the time to complete all or part of the work in connection with such subdivision, provided the time for all extensions under this subsection shall not exceed ten years from the date the subdivision was approved. If the commission grants an extension of an approval, the commission may condition the approval on a determination of the adequacy of the amount of the bond or other surety furnished under section 8-25, securing to the municipality the actual completion of the work.

"(c) In the case of a subdivision plan approved on or after October 1, 1977, failure to complete all work within such five-year period or any extension thereof shall result in automatic expiration of the approval of such plan provided the commission shall file on the land records of the town in which such subdivision is located notice of such expiration and shall state such expiration on the subdivision plan on file in the office of the town clerk of such town, and no additional lots in the subdivision shall be conveyed by the subdivider or his successor in interest as such subdivider except with approval by the commission of a new application for subdivision of the subject land. If lots have been conveyed during such five-year period or any extension thereof, the municipality shall call the bond or other surety on said subdivision to the extent necessary to complete the bonded improvements and utilities required to serve those lots. 'Work' for purposes of this section means all physical improvements required by the approved plan, other than the staking out of lots, and includes but is not limited to the construction of roads, storm drainage facilities and water and sewer lines, the setting aside of open space and recreation areas, installation of telephone and electric services, planting of trees or other landscaping, and installation of retaining walls or other structures.

"(d) Notwithstanding the provisions of this section, any subdivision approval made under this section on or before October 1, 1991, shall expire not more than seven years from the date of such approval and the commission may grant one or more extensions of time to complete all or part of the work in connection with such subdivision, provided the time for all extensions under this subsection shall not exceed ten years from the date the subdivision was approved. If the subdivider or his successor in interest submits evidence to the commission that completion of the project was delayed because of a state or federal construction project, the approval shall expire not more than ten years from the date of such approval and the commission may grant one or more extensions of time to complete all

judgment of the Appellate Court and remand the case for further proceedings.

The plaintiff, the town of Southington, brought this action against the defendant, Commercial Union Insurance Company, for payment on a subdivision performance bond on which the defendant was surety. After a trial to the court, the trial court rendered judgment for the plaintiff on its complaint. The defendant appealed to the Appellate Court, which reversed the judgment, and remanded the case with instruction to render judgment for the defendant. *Southington* v. *Commercial Union Ins. Co.*, 54 Conn. App. 328, 334, 735 A.2d 835 (1999). The plaintiff appealed to this court pursuant to our grant of certification.[2]

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The [plaintiff] brought an action against the defendant for payment under a performance bond that the defendant had posted as surety. Michael J. Martinez was the president, sole director and sole shareholder of A.M.I. Industries, Inc. (AMI). In 1988, AMI applied to the [plaintiff's] planning and zoning commission (commission) for approval of an industrial subdivision in the town on Captain Lewis Drive. At the time, the real property was

---

or part of the work in connection with such subdivision, provided the time for all extensions shall not exceed fifteen years from the date the subdivision was approved. If the subdivider or his successor in interest prevails in an appeal of a decision of the commission on the subdivision under section 8-8, the time to complete the subdivision shall be tolled for the time of such appeal and until the commission implements the judicial decision."

Although the legislature has amended § 8-26c several times since the subdivision application was filed in 1988, the statute remains substantively the same. Therefore, all references to § 8-26c are to the current revision of that statute.

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the defendant surety was not liable to the plaintiff municipality because of the provisions of General Statutes § 8-26c (c)?" *Southington* v. *Commercial Union Ins. Co.*, 251 Conn. 906, 738 A.2d 1093 (1999).

owned by Southington Land Associates, Inc. (SLA). On October 4, 1988, the commission approved the application subject to AMI's furnishing a $590,000 subdivision or public improvement bond.

"On November 1, 1988, Martinez, as principal, and the defendant, as surety, executed a subdivision bond for the real property, and on February 9, 1989, SLA sold the property to MJM Land Investments, Inc. (MJM). Martinez was the president and sole stockholder of MJM.[3] By April, 1995, Martinez, AMI and MJM had failed to complete the improvements required under the subdivision approval. The [plaintiff] informed the defendant[4] that the subdivision had not been completed and that if it was not completed by October 3, 1995, the [plaintiff] would have to call the bond. Martinez declared personal bankruptcy and the [plaintiff] purchased the real property in a foreclosure auction on June 27, 1995. None of the lots in the subdivision was sold prior to the expiration of the subdivision application.[5]

"When the defendant refused to pay the money that the [plaintiff] claimed under the bond, the [plaintiff] commenced suit alleging, in its amended complaint, breach of contract and negligence and, in the alternative, promissory estoppel and identity/unity of interest, seeking damages of $175,000 to complete the subdivi-

---

[3] It is undisputed that after MJM acquired title to the property, Martinez, acting through either MJM or AMI, proceeded to construct certain road improvements secured by the bond. In December, 1990, because some of the improvements had been made, the plaintiff reduced the principal amount of the bond from $590,000 to $357,000.

[4] "In 1991, ITT Hartford began to acquire and service the defendant's surety bond business and is now the real party in interest." *Southington* v. *Commercial Union Ins. Co.*, supra, 54 Conn. App. 331 n.3.

[5] "The subdivision application was approved on October 4, 1988. Pursuant to § 8-26c (d), the subdivision application expired not more than seven years from the date of the approval, i.e., October 3, 1995." *Southington* v. *Commercial Union Ins. Co.*, supra, 54 Conn. App. 331 n.4.

sion improvements. The trial court rendered judgment in favor of the [plaintiff] on the breach of contract and negligence counts of the complaint." *Southington* v. *Commercial Union Ins. Co.*, supra, 54 Conn. App. 330–31.

The defendant appealed from the judgment of the trial court to the Appellate Court, which reversed the judgment and remanded the case with direction to render judgment for the defendant. Id., 334. The Appellate Court concluded that, because no lots in the subdivision had been conveyed prior to the date the subdivision approval lapsed, § 8-26c (c) precluded the plaintiff from calling the bond.[6] Id., 333–34. This appeal followed.

The plaintiff claims that the Appellate Court improperly concluded that, pursuant to § 8-26c (c), the plaintiff could not call the defendant's performance bond in the absence of lots having been conveyed prior to the lapse

---

[6] Accordingly, the Appellate Court did not address the remainder of the defendant's claims, namely, that "the trial court improperly (1) failed to find that the [plaintiff] violated its statutory and regulatory obligations thereby prejudicing the defendant and discharging its surety obligation because the trial court (a) did not conclude that the [plaintiff], as a successor in interest, was required to provide a substitute bond, (b) did not conclude that the defendant was prejudiced by the [plaintiff's] failure to give it timely notice of the breach of contract; (2) failed to apply the law of the case to the count sounding in contract; (3) failed to conclude that the [plaintiff] had not met its burden of proof on the contract and negligence claims; and (4) awarded damages because it failed to conclude (a) that the [plaintiff] was required to complete the subdivision improvements before making a claim, (b) that the defendant was entitled to a refund for funds not expended by the [plaintiff], (c) that the [plaintiff's] proof was insufficient in that it did not establish the date of the breach and the cost of completing the improvements on that date, (d) that for equitable reasons, pursuant to General Statutes § 52-238 (a), no damages were due the [plaintiff] and (e) that the [plaintiff's] evidence of the cost of completing the improvements was speculative." *Southington* v. *Commercial Union Ins. Co.*, supra, 54 Conn. App. 330 n.2. Upon our remand, the Appellate Court will be required to address these claims. This should involve the question of whether the plaintiff, which acquired the property through foreclosure, was precluded from calling the bond because it had become, in effect, a successor developer of the subdivision.

of the subdivision approval. The plaintiff argues that § 8-26c (c) neither explicitly nor implicitly diminishes its authority to call a performance bond obligation pursuant to § 8-25 when no lots have been conveyed. The defendant contends, to the contrary, that § 8-26c (c) limits the plaintiff's ability to call the defendant's performance bond under § 8-25 because § 8-26c (c) limits municipal authority to call performance bonds to situations where lots have been conveyed prior to the lapse of the subdivision approval. We agree with the plaintiff.[7]

Whether the plaintiff was permitted to call the defendant's performance bond pursuant to §§ 8-25 and 8-26c (c) is a matter of statutory interpretation, as well as an issue of first impression for this court. Well settled principles of statutory interpretation govern our review. "When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law. . . . *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996). We construe each sentence, clause or phrase to have a purpose behind it. *State* v. *Ayala*, 222 Conn. 331, 346, 610 A.2d 1162 (1992). In addition, we presume that the legislature intends sensible results from the statutes it enacts. *State* v. *Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985).

[7] This conclusion renders it unnecessary to consider the plaintiff's contention that, even if the defendant is correct in its interpretation of § 8-26c (c), the plaintiff's acquisition of the property through the foreclosure constituted conveyance of all of the lots within the meaning of § 8-26c (c).

Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 319, 702 A.2d 1180 (1997)." (Internal quotation marks omitted.) *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 583–84, 726 A.2d 502 (1999).

We conclude that a municipality has broad discretion in deciding whether to call a subdivision performance bond posted pursuant to § 8-25. We further conclude that § 8-26c (c) limits that discretion in only one way: if lots have been conveyed during the applicable time period, the municipality is obligated to call the bond "to the extent necessary to complete the bonded improvements and utilities required to serve those lots . . . ." If, however, no lots have been conveyed, the municipality's broad discretion to decide whether to call the bond remains.

This question of statutory interpretation also must be resolved in light of several fundamental legal principles governing suretyship law and performance bonds. First, the general purpose of a suretyship contract is to "guard against loss in the event of the principal debtor's default." L. Simpson, Suretyship (1950) p. 2. "Suretyship by operation of law results when a third party promises a debtor to assume and pay the debt he owes to a creditor." Id., p. 32. Second, municipal bonds are construed in accordance with the general rules for written instruments. 13 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1997) § 37.209, p. 526. It is axiomatic that a performance bond runs to the benefit of the obligee. "[T]he obligation of a surety is an additional assurance to the one entitled to the performance of an act that the act will be performed." Restatement, Security, p. 225 (1941). Third, "[t]he liability of sureties is to be determined by the specified conditions of the bond . . . ." 13 E. McQuillin, supra, § 37.201, p. 502. In the present case, the bond signed by the defendant as surety

provided that the defendant would be bound until the improvements were completed.[8] Fourth, when a bond is required by statute, a court will read the statute into the contract between the principal, surety and obligee. Id., § 37.193, p. 477. "A contractor's bond, given for the full and faithful performance of a contract for a public improvement, will be construed with reference to the statute pursuant to which it is given, and such statutory provisions will be read into the bond . . . ." Id., § 37.195, p. 481.

Mindful of these legal principles, we first turn to the language of the relevant statutes, namely, §§ 8-25 and 8-26c (c). Section 8-25 gives municipalities the authority to approve or reject subdivision applications. Section 8-25 (a) provides in relevant part: "The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided and, in lieu of the completion of such work and installations previous to the final approval of a plan, *the commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. . . .*" (Emphasis added.) By its language, § 8-25 permits municipalities, prior to subdivision approval, to accept performance bonds in lieu of actual performance of subdivision improvements. Implicit in

---

[8] The performance bond provided in relevant part: "AND, WHEREAS, the Obligee required the filing of a Bond in the amount of Five hundred ninety thousand 00/100 ($590,000.) DOLLARS, to insure the completion of the installation of drainage, road, utilities and other improvements to 11 lot subdivision on Captain Lewis Drive-Subdivision No. 895. NOW, THERE-FORE, THE CONDITION OF THIS OBLIGATION IS SUCH that if the above bounden Principal shall within two (2) years from the date of recording of said plat, make the aforesaid improvements as required by the Town of Southington, Connecticut, then this obligation to be void; otherwise, it shall remain in full force and effect. . . ."

this statutory authority to accept a bond with surety in lieu of some other form of guarantee of the subdivider's performance obligations is the notion that upon the principal's failure to carry out its obligations under the bond, the municipality, which is the obligee on the bond, may call upon the surety to carry out those obligations. See *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 439, 692 A.2d 742 (1997) (public officials have implied powers necessary to proper execution of their duties). We conclude that, the defendant having undertaken as surety to carry out, as defined in the bond, its principal's subdivision obligations, the plaintiff had the general authority to call the bond, that is, to call upon the defendant as surety for payment for the performance of those obligations.

We ordinarily read statutes with common sense and so as not to yield bizarre results. *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 778, 739 A.2d 238 (1999). It would make little sense, and would yield a bizarre result, if we read the powers of a municipality to accept a bond pursuant to § 8-25 without the concomitant implied power to call the bond according to its terms.

The defendant does not dispute that, but for one sentence in § 8-26c (c), § 8-25 gives the plaintiff the authority to call the bond. Although § 8-25 was originally enacted in 1947 by No. 513, § 6, of the 1947 Public Acts, and codified at General Statutes (Sup. 1947) § 110i, and has undergone numerous amendments, the language authorizing municipalities to accept a bond in lieu of actual completion of subdivision improvements has not changed.[9] The controversy at issue in this appeal, there-

---

[9] The only difference between General Statutes (Sup. 1947) § 110i and the current statute, with respect to the provision authorizing the use of performance bonds, is the addition of the word "maintenance" in the clause: "the commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, *maintenance* and installation of such improvements and utilities within

fore, turns on the meaning of certain of the language of § 8-26c (c), namely, whether that language imposes any limitation on the plaintiff's authority to call the defendant's performance bond. We conclude that it does not.

Section 8-26c (c) mandates the expiration of the subdivision approval after the lapse of the five year period, or any applicable extension thereof, requires that the expiration of approval be noted on the land records of the municipality as well as on the subdivision plan on file, and prohibits the subdivider or his successor in interest from conveying additional lots. At issue is the second sentence in § 8-26c (c), which provides: "If lots have been conveyed during such five-year period or any extension thereof, the municipality shall call the bond or other surety on said subdivision to the extent necessary to complete the bonded improvements and utilities required to serve those lots." We acknowledge that this language is susceptible of two meanings: (1) a municipality may call the bond *only* if lots have been conveyed—the meaning attributed to it by the defendant and the Appellate Court; and (2) if lots have been conveyed, a municipality is obligated to call the bond for the benefit of those lot owners, but if no lots have been conveyed the municipality nonetheless retains the discretion to do so—the meaning that the plaintiff attributes to it. We conclude that the latter interpretation is the more plausible. Therefore, if lots have been conveyed prior to the lapse of the specified time period from the date of the subdivision approval, a municipality is obligated to call the bond to the extent necessary to serve those lots, but if no lots have been conveyed prior to such date, the municipality nonetheless retains the discretion to call the bond.

a period specified in the bond. . . ." (Emphasis added.) General Statutes § 8-25 (a).

Our interpretation gives effect to both the language of § 8-26c (c) and the general authority of the plaintiff to call a bond under § 8-25. First, as previously discussed, municipalities have the general authority under § 8-25 to accept subdivision performance bonds and, therefore, have the concomitant authority to call such bonds. To conclude that a municipality may call a bond *only* if lots have been conveyed would mean, in effect, that § 8-26c (c) implicitly amended § 8-25 by displacing that general authority with the more limited authority suggested by the defendant. We ordinarily read statutes to form a consistent, coherent whole. *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993) ("courts must discharge their responsibility . . . to assure that the body of the law—both common and statutory—remains coherent and consistent"). We also do not ordinarily read statutes so as to amend others implicitly. *State* v. *Jason B.*, 248 Conn. 543, 565, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999).

In sum, pursuant to § 8-25, a municipality has the general discretionary authority to determine whether to call a subdivision performance bond. This authority obviously includes the discretion in a given case to decline to call a performance bond. We conclude that the language of § 8-26c (c) at issue carves out from that general discretionary authority one instance in which the municipality may not decline to call the bond, namely, when lots have been conveyed and the bonded improvements and utilities are required to serve those lots. Section 8-26c (c) does not, however, as the defendant contends and the Appellate Court concluded, make it a *condition precedent* to the *calling of such a bond* that lots have been conveyed. Instead, the municipality retains its general authority under § 8-25 to call subdivision performance bonds.

This conclusion is buttressed by the genealogy of § 8-26c (c). As originally enacted by No. 677, § 2, of the

1967 Public Acts, § 8-26c served as an enforcement mechanism that imposed a five year period on developers to complete subdivision improvements. The statute originally provided: "Any person, firm or corporation making any subdivision of land shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision." General Statutes (1967 Cum. Sup.) § 8-26c. In its original version, § 8-26c did not provide a penalty for failure to complete subdivision improvements within five years. The legislature provided such a penalty ten years later when it enacted No. 77-545, § 4, of the 1977 Public Acts, later codified at what is now subsection (c) of § 8-26c.[10] Thus, from 1947, when § 8-25 was originally enacted, until 1977, when what is now subsection (c) of § 8-26c was added, there was no limitation on a municipality's authority to call a bond, irrespective of whether lots had been conveyed. It is difficult to conceive why, as the defendant's argument suggests, after this thirty year history the legislature would have drastically limited that authority to the situation in which lots had been conveyed.

The legislative debate regarding the enactment of § 8-26c (c) further supports our interpretation and demonstrates the various purposes that the legislature intended § 8-26c (c) to serve. "This will stop subdivisions that were approved in 1916 and [1917] and still haven't been completed as of this date and as—it's holding up the progress of town planning." 12 H.R.

---

[10] Subsequent amendments to § 8-26c (c) have focused on setting time limitations for subdivision completion while failing to address municipal authority to call subdivision bonds. In 1991, the legislature amended what was formerly § 8-26c (c), by virtue of No. 91-153 of the 1991 Public Acts, in order to extend the time requirement to complete subdivision improvements from five to seven years. A subsequent amendment in 1993, by virtue of No. 93-19, § 2, of the 1993 Public Acts, also provided municipalities with the authority to grant extensions for subdivision improvements due to prevailing economic conditions.

Proc., Pt. 10, 1967 Sess., p. 4508, remarks of Representative William J. Lavery. "[T]he purpose is to help our housing industry." 34 S. Proc., Pt. 4, 1991 Sess., p. 1493, remarks of Senator George C. Jepsen. "A number of subdivisions and developments were planned and conceived in the mid-1980's prior to the collapse of the real estate market in our state and a number of these projects remain stalled . . . . It also helps our banking industry which is beleaguered because subdivisions are lost and the value of the land will go down . . . and finally it is of some assistance to our municipalities because all this land that is subdivided is of greater value and taxed on a higher basis." Id. "This bill is one of the initiatives of the Housing Committee to help the state weather the economic storm we are in . . . ." 36 H.R. Proc., Pt. 4, 1993 Sess., p. 1309, remarks of Representative Alex A. Knopp. "It also gives [municipalities] an opportunity in difficult economic times to allow for an extension of that time while ensuring the responsibility of a developer so that we don't get a subdivision that's perhaps half completed or three-quarters completed. *A developer goes bankrupt and walks away from the subdivision, leaving the municipality with an inadequate bond to complete the subdivision . . . .*" (Emphasis added.) Id., p. 1316, remarks of Representative Dale W. Radcliffe. These statements demonstrate that, in 1993, twenty-six years after the legislature had adopted § 8-26c, the legislature was concerned with developers and sureties leaving municipalities with inadequate resources to complete subdivision improvements. Nothing in the legislative history of § 8-26c (c) suggests that the legislature intended to release developers or sureties from their obligations to complete subdivision improvements.

There was no discussion regarding the authority of municipalities to call performance bonds at the time the legislature added what is now subsection (c) of § 8-

26c. See 20 S. Proc., Pt. 9, 1977 Sess., p. 3576; 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2411, 2420–21. The legislature's silence regarding a municipality's authority to call a performance bond once subdivision approval lapses is particularly instructive. We do not take the legislature's silence to mean that the legislature intended to abrogate the general discretionary authority held by municipalities under § 8-25. Instead, we take the legislature's silence to mean that the passage of what is now § 8-26c (c) was not intended to change the parties' obligations under § 8-25 when no lots have been conveyed.

We next address the legislative policy that §§ 8-25 and 8-26c (c) were designed to implement. Sections 8-25 and 8-26c are part of chapter 126 of the General Statutes, entitled "Municipal Planning Commissions." Municipal planning commissions are created to prepare and adopt plans of development for towns based on studies of physical, social, economic and governmental conditions and trends. T. Byrne, Planning and Zoning in Connecticut (3d Ed. 1982) p. 10. "Municipal planning is designed to promote, with the greatest efficiency and economy, the co-ordinated development of the municipality and the general welfare and prosperity of its people." (Internal quotation marks omitted.) *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission*, 160 Conn. 109, 112, 273 A.2d 880 (1970).

The purpose of § 8-25 is uncontroverted. Section 8-25 authorizes municipalities to oversee plans for subdivisions and sets forth the requirements for acquiring subdivision approval. Most important for the present case, § 8-25 gives municipalities the authority to accept performance bonds in lieu of actual performance of subdivision improvements prior to approval. Section 8-25 is important for municipal development because developers often cannot afford to finance the costs associated with subdividing land. See 5 A. Rathkopf & D. Rathkopf, Law of Zoning and Planning (2000) § 66.06,

pp. 66-31 through 66-32. "Permitting a subdivision developer to post a performance bond is a favor to the developer, a privilege extended by the local government unit." R. Yearwood, "Performance Bonding for Subdivision Improvements," 46 J. Urban L. 67, 68 (1968). Bonds thus encourage and support municipal development. We are unwilling to undermine the important role bonds play in municipal development by construing § 8-26c (c) as the defendant advocates, so as to abrogate municipal authority.

Furthermore, a contrary interpretation would mean that the legislature abrogated the fundamental common law of suretyship and bond principles that we discussed previously. We do not ordinarily read statutes in such a manner absent clear legislative intent. "Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed." (Internal quotation marks omitted.) *Munroe* v. *Great American Ins. Co.*, 234 Conn. 182, 187, 661 A.2d 581 (1995). We do not find such an intent here, and therefore we decline to construe § 8-26c (c) in such a manner.

Moreover, "[i]n construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Shawhan* v. *Langley*, 249 Conn. 339, 349, 732 A.2d 170 (1999) (*McDonald, J.*, dissenting). Because the conveyance of lots is one aspect of a subdivision project, common sense dictates that the legislature intended that municipalities retained the discretion to call subdivision performance bonds in the absence of the conveyance of lots. It would make no sense to *require* municipalities to call a bond when lots have been conveyed—one aspect of the overall subdivision project having been

completed—but *disallow* them to call the bond when lots have not been conveyed.

Our interpretation also makes sense as a policy matter. It is logical that the legislature would provide some modicum of protection for property owners by carving out an exception to the general rule. In the case of landowners who may have purchased lots relying on assurances that the subdivision would be completed, the legislature has seen fit to protect them by mandating that the municipality call the bond in order to service those lots. In this context, §§ 8-25 and 8-26c (c) complement each other so as to promote municipal development. In the absence of such a directive, the municipality could decide not to call the performance bond, which could lead to financial hardships for those who already have purchased lots. Incomplete improvements could also harm the municipality by being unsightly, decreasing property values, or creating dangerous conditions. In addition, municipalities may have relied on the improvements guaranteed by developers and their sureties when planning other projects, and therefore incomplete improvements could adversely affect a municipality's overall development scheme. Finally, we have not been presented with any persuasive reasons why the legislature would have intended to limit a municipality's authority as the defendant's interpretation would require.

The defendant contends that the Appellate Court properly construed the statute based on the purpose of subdivision bonds, namely, to strike a balance among towns, developers, sureties and landowners. As we noted previously, however, performance bonds run to the benefit of the municipality. Although it is true, as the defendant suggests, that the purpose of performance bonds is not to punish developers for failing to make required improvements, the bonds nevertheless ensure that developers follow through on their obligations to make such improvements, upon which municipalities

rely when granting subdivision approval. See R. Year-wood, supra, 46 J. Urban L. 68. The defendant's interpretation would allow developers and their sureties, who would be excused from initially contributing the money to make the necessary improvements, to develop land on the assurance to the municipality that such improvements would be made, but without accountability if the subdivision lapsed without lots having been conveyed.

Finally, the defendant argues that the plaintiff's interpretation of the first two sentences of § 8-26c (c) itself is inconsistent. According to the defendant, once the subdivision lapses, no lots may be conveyed by the developer or his successor in interest until a new application is filed and approved. In that instance, in order for a new subdivision application to be approved under § 8-25, the improvements must be completed or a new performance bond provided. The defendant argues that these requirements relieve the original developer and surety of any obligations imposed under the first approval.

This analysis is flawed for several reasons. First, § 8-26c (c) only dictates that once subdivision approval lapses, a successor in interest cannot rely on the original approval to finish improvements or convey additional lots. Nothing in the language of § 8-26c (c) indicates that the municipality itself cannot call a performance bond once a subdivision lapses. Its language mandates action only if lots have been conveyed prior to the lapse of the subdivision, in which case the municipality must call the bond to the extent necessary to service those lots. As we noted previously, however, the municipality has discretion in calling a bond when lots have not been conveyed.[11] Second, contrary to the defendant's

---

[11] The defendant argues that it would be impractical and illogical to require the first developer or surety to complete improvements once the application has lapsed, because a successor developer may want to modify the application to suit new plans. The defendant argues, therefore, that the plaintiff's interpretation of § 8-26c (c) would provide a disincentive to future development of lapsed subdivisions. This reasoning is unpersuasive, however,

position, the lapse of the original approval does not mandate that lots can be sold only if a second application is filed and approved. As we have discussed, no additional application would be required if the municipality calls the original bond and the subdivision is completed prior to a successor in interest acquiring the land.

In sum, the plaintiff relied upon a valid surety bond signed by the defendant. Subdivision improvements were not completed within the statutory time limits provided by § 8-26c. The plaintiff was therefore entitled to call the performance bond to have those improvements completed as promised. Nothing in the language of § 8-26c (c), its legislative history, or the relevant statutory or common-law scheme dictates a different result.

The judgment of the Appellate Court is reversed and the case is remanded to that court to address the issues remaining on appeal.

In this opinion the other justices concurred.

because it is the municipality that has the discretion to enforce the original application requirements when a lapse occurs. Thus, whether to provide such a disincentive, if there be one, is a matter left to the municipality's discretion.