TOWN OF SOUTHINGTON *v.* COMMERCIAL UNION
INSURANCE COMPANY
(AC 18088)

Landau, Schaller and Dupont, Js.

716

Argued December 11, 2001—officially released August 27, 2002

*Bradford R. Carver*, for the appellant (defendant).

*Marjorie S. Wilder*, with whom, on the brief, was *Talbot A. Welles*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. This appeal concerns a subdivision performance bond provided pursuant to General Statutes § 8-25. The primary issue is whether the surety is liable to the municipality where the surety's bankrupt principal has failed to complete the subdivision and the municipality, which acquired the subject land at a foreclosure sale, has become the successor developer. We conclude that, pursuant to the terms of the bond[1] and

---

[1] The bond stated: "KNOW ALL MEN BY THESE PRESENTS: That we, Michael J. Martinez 5 Park Place, Meriden Connecticut 06450 as Principal, and Commercial Union Insurance Company as Surety, are held and firmly bound unto Town of Southington, Connecticut, as Obligee, in the sum of Five hundred ninety thousand 00/100—($590,000.00) DOLLARS, lawful money of the United States of America, for the payment of which, well and truly, to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

§ 8-25,[2] the surety is liable to the municipality for completion of the subdivision.

This appeal returns to this court for the third time to resolve the remaining claims of the defendant, Com-

"WHEREAS, the above bounden principal has made application to Town of Southington, Connecticut for approval and acceptance of the installation of drainage, road, utilities and other improvements to 11 lot subdivision on Captain Lewis Drive—Subdivision No. 895

"AND, WHEREAS, the Obligee required the filing of a Bond in the amount of Five hundred ninety thousand 00/100 ($590,000.) DOLLARS, to insure the completion of the installation of drainage, road, utilities and other improvements to 11 lot subdivision on Captain Lewis Drive-Subdivision No. 895. NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH that if the above bounden Principal shall within two (2) years from the date of recording of said plat, make the aforesaid improvements as required by the Town of Southington, Connecticut, then this obligation to be void; otherwise, it shall remain in full force and effect. SIGNED, SEALED AND DATED this 1st day of November, 1988."

The bond was signed by Martinez, as principal, and Sebastian Rodo, attorney in fact, for the defendant, as surety.

[2] General Statutes § 8-25 (a) provides in relevant part: "The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided and, in lieu of the completion of such work and installations previous to the final approval of a plan, the commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. Such regulations may provide, in lieu of the completion of the work and installations above referred to, previous to the final approval of a plan, for an assessment or other method whereby the municipality is put in an assured position to do such work and make such installations at the expense of the owners of the property within the subdivision. Such regulations may provide that in lieu of either the completion of the work or the furnishing of a bond as provided in this section, the commission may authorize the filing of a plan with a conditional approval endorsed thereon. Such approval shall be conditioned on (1) the actual construction, maintenance and installation of any improvements or utilities prescribed by the commission, or (2) the provision of a bond as provided in this section. Upon the occurrence of either of such events, the commission shall cause a final approval to be endorsed thereon in the manner provided by this section. Any such conditional approval shall lapse five years from the date it is granted, provided the applicant may apply for and the commission may, in its discretion, grant a renewal of such conditional approval for an additional period of five years at the end of any five-year period, except that the commission may, by regulation, provide for

mercial Union Insurance Company.[3] See *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 369, 757 A.2d 549 (2000). The defendant's remaining claims are that "the trial court improperly (1) failed to find that the [plaintiff town of Southington] violated its statutory and regulatory obligations thereby prejudicing the defendant and discharging its surety obligation because the trial court (a) did not conclude that the [plaintiff], as a successor in interest, was required to provide a substitute bond, (b) did not conclude that the defendant was prejudiced by the [plaintiff's] failure to give it timely notice of the breach of contract; (2) failed to apply the law of the case to the count [of the plaintiff's complaint] sounding in contract; (3) failed to conclude that the [plaintiff] had not met its burden of proof on the contract and negligence claims; and (4) awarded damages because it failed to conclude (a) that the [plaintiff] was required to complete the subdivision improvements before making a claim, (b) that the defendant was entitled to a refund for funds not expended by the [plaintiff], (c) that the [plaintiff's] proof was insufficient in that it did not establish the date of the breach and the costs of completing the improvements on that date, (d) that for equitable reasons, pursuant to General Statutes § 52-238 (a), no damages were due the [plaintiff] and (e) that the [plaintiff's] evidence of the cost of completing the improvements was speculative." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, supra, 356 n.6, quoting *Southington* v. *Com-*

a shorter period of conditional approval or renewal of such approval. . . ."

Although the legislature has amended § 8-25 several times since the subdivision application was filed in 1988, the statute remains substantively the same. Therefore, all references to § 8-25 are to the current revision of that statute. See *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 350–52 n.1, 757 A.2d 549 (2000).

[3] "In 1991, ITT Hartford began to acquire and service the defendant's surety bond business and is now the real party in interest." *Southington* v. *Commercial Union Ins. Co.*, 54 Conn. App. 328, 331 n.3., 735 A.2d 835 (1999), rev'd, 254 Conn. 348, 757 A.2d 549 (2000).

*mercial Union Ins. Co.,* 54 Conn. App. 328, 330 n.2, 735 A.2d 835 (1999), rev'd, 254 Conn. 348, 757 A.2d 549 (2000). In addition, our Supreme Court advised this court to consider "whether the plaintiff, which acquired the property through foreclosure, was precluded from calling the bond because it had become, in effect, a successor developer of the subdivision." *Southington* v. *Commercial Union Ins. Co.,* supra, 254 Conn. 356 n.6.

The following relevant facts and procedural history are not in dispute. "The [plaintiff] brought an action against the defendant for payment under a performance bond that the defendant had posted as surety. Michael J. Martinez was the president, sole director and sole shareholder of A.M.I. Industries, Inc. (AMI). In 1988, AMI applied to the [plaintiff's] planning and zoning commission (commission) for approval of an industrial subdivision in the town on Captain Lewis Drive. At the time, the real property was owned by Southington Land Associates, Inc. (SLA). On October 4, 1988, the commission approved the application subject to AMI's furnishing a $590,000 subdivision or public improvement bond.

"On November 1, 1988, Martinez, as principal, and the defendant, as surety, executed a subdivision bond for the real property, and on February 9, 1989, SLA sold the property to MJM Land Investments, Inc. (MJM). Martinez was the president and sole stockholder of MJM. By April, 1995, Martinez, AMI and MJM had failed to complete the improvements required under the subdivision approval. [By letter dated April 7, 1995] [t]he [plaintiff] informed the defendant that the subdivision had not been completed and that if it was not completed by October 3, 1995, the [plaintiff] would have to call the bond. Martinez declared personal bankruptcy and the [plaintiff] purchased the real property in a foreclosure auction on June 27, 1995." (Internal quotation marks omitted.) Id., 354–55, quoting *Southington* v.

*Commercial Union Ins. Co.*, supra, 54 Conn. App. 330–31.

The plaintiff commenced this action on June 23, 1995, alleging, in its amended complaint, breach of contract and negligence and, in the alternative, promissory estoppel and identity-unity of interest, and seeking damages of $175,000 to complete the subdivision improvements. The trial court, *Hon. Frances Allen*, judge trial referee, rendered judgment in favor of the plaintiff on the breach of contract and negligence counts of the complaint. The defendant appealed to this court, which reversed the trial court's judgment, concluding that because at the time the plaintiff called the bond, no lots in the subdivision had been conveyed "that would require the completion of public improvements covered by the bond, the defendant has incurred no liability to the [plaintiff]." *Southington* v. *Commercial Union Ins. Co.*, supra, 54 Conn. App. 334. The plaintiff thereafter appealed to our Supreme Court, which reversed our judgment, holding that "a municipality has broad discretion in deciding whether to call a subdivision performance bond posted pursuant to § 8-25." *Southington* v. *Commercial Union Ins. Co.*, supra, 254 Conn. 358. Our Supreme Court remanded the case to this court to consider the defendant's remaining claims.

To address the issue raised by our Supreme Court, i.e., "whether the plaintiff, which acquired the property through foreclosure, was precluded from calling the bond because it had become, in effect, a successor developer of the subdivision"; id., 356 n.6.; we remanded the case to the trial court; *Southington* v. *Commercial Union Ins. Co.*, 61 Conn. App. 757, 768 A.2d 454 (2001); because it is well known that appellate courts do not find facts and draw conclusions related thereto. See *Perkins* v. *Fasig*, 57 Conn. App. 71, 79, 747 A.2d 54, cert. denied, 253 Conn. 925, 754 A.2d 797 (2000).

On remand to the trial court, the parties stipulated to the following facts. The plaintiff purchased the property for economic and industrial development and thus became a successor developer. The plaintiff paid $325,450 for the property. At the time of the trial in October, 1997, the plaintiff had sold four of the eleven lots in the subdivision; the average price per acre was $40,000. The court, *Hon. Richard M. Rittenband*, judge trial referee, found on remand that the plaintiff had purchased the property, which is in an economic empowerment zone, not to make a profit, but to stimulate economic development. Judge Rittenband declined to decide whether the plaintiff was precluded from calling the bond because it was a successor developer. The parties returned to this court for additional oral argument, but without supplemental briefing.

We first review the law governing subdivision bonds and suretyship in general. The performance bond in question was posted pursuant to § 8-25. In such situations, our Supreme Court has observed that the rules of statutory construction as well as several fundamental principles governing suretyship law apply to the defendant's claims. *Southington* v. *Commercial Union Ins. Co.*, supra, 254 Conn. 358. "First, the general purpose of a suretyship contract is to 'guard against loss in the event of the principal debtor's default.' . . . 'Suretyship by operation of law results when a third party promises a debtor to assume and pay the debt he owes to a creditor.' . . . Second, municipal bonds are construed in accordance with the general rules for written instruments. . . . It is axiomatic that a performance bond runs to the benefit of the obligee. '[T]he obligation of a surety is an additional assurance to the one entitled to the performance of an act that the act will be performed.' . . . Third, '[t]he liability of sureties is to be determined by the specified conditions of the bond. . . .' *In the present case, the bond signed by the defen-*

*dant as surety provided that the defendant would be bound until the improvements were completed.* Fourth, when a bond is required by statute, a court will read the statute into the contract between the principal, surety and obligee. . . . 'A contractor's bond, given for the full and faithful performance of a contract for a public improvement, will be construed with reference to the statute pursuant to which it is given, and such statutory provisions will be read into the bond . . . ." (Citations omitted; emphasis added.) Id., 358–59.

## I

We first turn to our Supreme Court's question as to whether the plaintiff was precluded from calling the performance bond because it had become a successor developer; see id., 356, n.6.; as it could be dispositive of the appeal. We conclude, however, that although the plaintiff is a successor developer of the subdivision, having acquired the property at a foreclosure sale, it is not precluded from calling the bond.

As previously stated, the parties stipulated that the plaintiff had acquired the property at a foreclosure sale for the purpose of economic and industrial development and had become a successor developer. The court on remand found that the property is in an economic empowerment zone and that the plaintiff's purpose in developing the property is to stimulate economic development, not to make a profit. Neither of the parties has brought any law to our attention that the manner in which the plaintiff acquired the property is consequential to the issue, and we know of none.[4]

---

[1] The defendant claims without authority that the plaintiff had an obligation to inform it that the defendant's principal was in bankruptcy so that the defendant could protect its surety interest. This contention strikes us as somewhat disingenuous. At trial, Martinez, the principal, testified that both the plaintiff and the defendant were listed as creditors when he sought bankruptcy protection in 1993.

The defendant argues that because the plaintiff is a successor developer, it is wearing two hats, i.e., that of the principal and that of the obligee. The merger of these two roles, the defendant contends, destroys the suretyship relationship. It also contends that by purchasing the land, the plaintiff destroyed the defendant's right of equitable subrogation against Martinez. The defendant cites no authority for the argument that its equitable rights have been destroyed and no findings of fact related thereto.[5]

The plaintiff responds to the defendant's arguments by emphasizing that although it may be a successor developer, the bond was provided pursuant to § 8-25 to protect it from the burden of an incomplete subdivision. The defendant agreed to complete the subdivision improvements if Martinez did not. We agree with the plaintiff.

"When a bond is issued to comply with a statutory condition precedent to any transaction with a public authority . . . the language of the bond . . . is to be interpreted in the light of the statute and with a view to effectuating the legislative intent." (Internal quotation marks omitted.) *Brookfield* v. *Greenridge, Inc.*, 177 Conn. 527, 535, 418 A.2d 907 (1979). Because this issue requires us to interpret the performance bond in concert with § 8-25, our review is plenary. See *Education Assn. of Clinton* v. *Board of Education*, 259 Conn. 5, 15, 787 A.2d 517 (2002) (review of statutory construction is plenary); *Aubin* v. *Miller*, 64 Conn. App. 781, 786, 781 A.2d 396 (2001) (interpretation of contract is question of law, review is plenary).

---

[5] We agree that "[u]pon total satisfaction of the underlying obligation, the [surety] is subrogated to all rights of the obligee with respect to the underlying obligation to the extent that performance of the [surety obligation] contributed to the satisfaction." Restatement (Third), Suretyship and Guaranty § 27 (1), p. 113 (1996).

Section 8-25 (a) provides the reason for which municipalities may require developers of subdivisions to provide performance bonds. "[T]he commission may accept a bond in an amount and with surety and conditions satisfactory to it *securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. . . .*" (Emphasis added.) General Statutes § 8-25 (a). "The purpose of statutory construction is to give effect to the intended purpose of the legislature. . . . If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Citations omitted; internal quotation marks omitted.) *State* v. *DeFrancesco*, 235 Conn. 426, 435, 668 A.2d 348 (1995). In other words, if Martinez or one of his businesses did not complete the subdivision in two years, the plaintiff could look to the defendant's bond to complete the subdivision.

The performance bond stated in relevant part: "NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH that if the above bounden Principal shall within two (2) years from the date of recording of said plat, make the aforesaid improvements as required by the Town of Southington, Connecticut, then this obligation to be void; *otherwise, it shall remain in full force and effect. . . .*" (Emphasis added.)

"Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law." (Internal quotation marks omitted.) *Alco Standard Corp.* v. *Charnas*, 56 Conn. App. 568, 571, 744 A.2d 924 (2000). "[W]e interpret contract language in accordance with a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can

be sensibly applied to the subject matter of the contract. . . . If the terms of [a contract] are clear, their meaning cannot be forced or strained by an unwarranted construction to give them a meaning which the parties obviously never intended. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citation omitted; internal quotation marks omitted.) *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 286, 757 A.2d 526 (2000).

We conclude that the plaintiff was not precluded from calling the bond although it had become a successor developer. The language of the performance bond and § 8-25 (a) are clear and unambiguous. If the subdivision was not completed in two years, the bond placed no limitations on the defendant's obligation to the plaintiff; to the contrary, it provided that the bond shall continue in full force and effect. The parties agree that Martinez, AMI and MJM did not complete the work on the subdivision in two years from the date the plat was recorded.

Although we conclude that the language of the bond and the statute are clear, we think that it is worth noting that together, they fulfill the legislature's intent. Significantly, Martinez, the defendant's principal, became a bankrupt. The bond therefore is available to fulfill the intent of our legislature as set out in our municipal planning laws, codified in chapter 126 of our General Statutes. In the early 1990s, certain amendments were enacted to these laws in response to the vicissitudes of land development, notably periods of economic growth and decline. Bankruptcy of developers and subdivision projects was of concern to our legislature.[6] See *Southington* v. *Commercial Union Ins.*

---

[6] Comment b of § 34 of the Restatement (Third), Suretyship and Guaranty (1996), provides: "Discharge in bankruptcy proceedings. A [surety] obligation protects against the inability or unwillingness of the principal obligor

*Co.*, supra, 254 Conn. 364, quoting the remarks of Representative Dale W. Radcliffe. Our Supreme Court observed that the statements of various legislators in enacting legislation regulating subdivision approvals and surety bonds "demonstrate that . . . the legislature was concerned with developers and sureties leaving municipalities with inadequate resources to complete subdivision improvements. Nothing in the legislative history of [General Statutes § 8-26c] suggests that the legislature intended to release developers or sureties from their obligations to complete subdivision improvements." *Southington* v. *Commercial Union Ins. Co.*, supra, 364. Because the defendant's principal went bankrupt and failed to complete the subdivision, the bond is available to the plaintiff to complete the subdivision.

Pursuant to § 8-25 and the terms of the bond itself, the plaintiff is entitled to the proceeds of the bond to pay for the work needed to complete the subdivision, which the defendant's principal failed to do. "The bond in this case is for the protection of the public rather than for the benefit of the surety . . . ." *Brookfield* v. *Greenridge, Inc.*, supra, 177 Conn. 535. "The surety was paid to provide security against that very risk." *Okee Industries, Inc.* v. *National Grange Mutual Ins. Co.*, 225 Conn. 367, 378, 623 A.2d 483 (1993). The plaintiff therefore was not precluded from calling the bond, even though it had become a successor developer.

to perform the underlying obligation. Most often, a principal obligor that fails to perform does so because of a financial inability to perform. Financial inability to live up to one's obligations, of course, correlates quite highly with insolvency and bankruptcy. Indeed, [a principal] who insists upon a [surety] as a condition of extending credit is typically most concerned about the risk of discharge in bankruptcy proceedings. If the [principal's] defense of discharge in bankruptcy proceedings could be raised by the [surety], the value of the secondary obligation would be seriously diminished. Accordingly, this defense may not be raised by the [surety]."

## II

The first of the defendant's remaining claims is that the court improperly failed to find that the plaintiff violated its statutory and regulatory obligations, thereby prejudicing the defendant and discharging its surety obligation. The defendant claims that the court should have concluded (1) that the plaintiff, as successor in interest, was required to provide a substitute bond and (2) that the defendant was prejudiced by the plaintiff's failure to give it timely notice of the breach of contract. We disagree.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Noble v. White, 66 Conn. App. 54, 60, 783 A.2d 1145 (2001)." (Internal quotation marks omitted.) Lussier v. Spinnato, 69 Conn. App. 136, 141, 794 A.2d 1008, cert. denied, 261 Conn. 910, 806 A.2d 49 (2002). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) State v. Miller, 67 Conn. App. 544, 547, 787 A.2d 639, cert. denied, 259 Conn. 923, 792 A.2d 855 (2002).

## A

The defendant claims that subsections (b) and (c) of § 8-26c[7] support its position that the plaintiff, as a

---

[7] General Statutes § 8-26c provides in relevant part: "(b) The subdivider or his successor in interest may apply for and the commission may grant one or more extensions of the time to complete all or part of the work in connection with such subdivision, provided the time for all extensions under this subsection shall not exceed ten years from the date the subdivision

successor developer, is precluded from calling the bond, citing that "no additional lots in the subdivision shall be conveyed by the subdivider or his successor in interest as such subdivider except with approval by the commission of a new application for subdivision of the subject land"; General Statutes § 8-26c (c); and that "[i]f the commission grants an extension of an approval, the commission may condition the approval on a determination of the adequacy of the amount of the bond or other surety furnished under section 8-25, securing to the municipality the actual completion of the work." General Statutes § 8-26c (b). On the basis of these subsections of the statutes, the defendant contends that the plaintiff was required to obtain approval of a subdi-

was approved. If the commission grants an extension of an approval, the commission may condition the approval on a determination of the adequacy of the amount of the bond or other surety furnished under section 8-25, securing to the municipality the actual completion of the work.

"(c) In the case of a subdivision plan approved on or after October 1, 1977, failure to complete all work within such five-year period or any extension thereof shall result in automatic expiration of the approval of such plan provided the commission shall file on the land records of the town in which such subdivision is located notice of such expiration and shall state such expiration on the subdivision plan on file in the office of the town clerk of such town, and no additional lots in the subdivision shall be conveyed by the subdivider or his successor in interest as such subdivider except with approval by the commission of a new application for subdivision of the subject land. If lots have been conveyed during such five-year period or any extension thereof, the municipality shall call the bond or other surety on said subdivision to the extent necessary to complete the bonded improvements and utilities required to serve those lots. 'Work' for purposes of this section means all physical improvements required by the approved plan, other than the staking out of lots, and includes but is not limited to the construction of roads, storm drainage facilities and water and sewer lines, the setting aside of open space and recreation areas, installation of telephone and electric services, planting of trees or other landscaping, and installation of retaining walls or other structures."

"Although the legislature has amended § 8-26c several times since the subdivision application was filed in 1988, the statute remains substantively the same. Therefore, all references to § 8-26c are to the current revision of that statute." *Southington* v. *Commercial Union Ins. Co.*, supra, 254 Conn. 350–54 n.1.

vision plan and to post a bond of its own.[8] The essence of the defendant's argument is that if the plaintiff had posted a bond, the defendant would be relieved of its obligation as surety. We are not persuaded.

The defendant's argument with respect to § 8-26c (b) and (c) is misplaced. These statutory subsections are directed to a municipality and prescribe what it may require of successor developers to ensure completion of the subdivision and what must be done before a developer may convey lots. The statutes were enacted for the benefit of municipal taxpayers to prevent their having to pay for the completion of subdivisions, not for a surety whose principal has defaulted. See *Brookfield* v. *Greenridge, Inc.*, supra, 177 Conn. 535. These issues and corresponding statutes do not apply to a judgment for breach of contract. The contract at issue is the performance bond, which was provided pursuant to § 8-25. As we concluded in part I, the language of the performance bond is controlling, not § 8-26c (b) or (c).

Furthermore, § 8-26c (b) does not mandate that a commission require a successor developer to post a bond. Section 8-26c (b) provides that "the commission

---

[8] In support of this argument, the defendant cites *Peekskill* v. *Continental Ins. Co.*, 999 F. Sup. 584 (S.D.N.Y.), aff'd, 166 F.3d 1199 (2d Cir. 1998). The facts in *Peekskill* are substantially different from the facts in this case. Furthermore, we note that the defendant has relied on a number of New York cases and statutes. Although the defendant has asked us to compare the law of New York favorably with its position here, the defendant has not included the text of the relevant New York statutes in its brief. See Practice Book § 67-4 (e). We can only speculate as to the statutes on which the defendant relies. The New York statutes cited in the appendix to the plaintiff's brief, however, indicate that the language of our subdivision statutes and New York's are not identical. New York law does not mention successor developers or conveyance of lots. See, e.g., N.Y. Village Law § 7-730 (9) (d) and (e) (McKinney 1996); see also *International Harvester Co.* v. *L.G. DeFelice & Son, Inc.*, 151 Conn. 325, 331, 197 A.2d 638 (1964) ("interpretations of similar statutes in other states are of little help in an interpretation of our own statute because of the variations of wording involved").

*may* condition the approval . . . ." (Emphasis added.) General Statutes § 8-26c (b). The legislature's use of the term may denotes permissiveness or discretion. See *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 165, 740 A.2d 796 (1999). The commission need not require a successor developer to post a performance bond, particularly in this instance where the successor developer is the municipality that is protected by the performance bond of the defendant's principal. The defendant's argument suggests that the plaintiff as successor developer must obtain a bond to protect itself from its own failure to complete the subdivision. We will not torture the words of the statute to obtain such a bizarre result. See *Rocque* v. *Northeast Utilities Service Co.*, 254 Conn. 78, 86, 755 A.2d 196 (2000). "[C]ommon sense must be used in statutory interpretation, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Carpenter* v. *Freedom of Information Commission*, 59 Conn. App. 20, 24, 755 A.2d 364, cert. denied, 254 Conn. 933, 761 A.2d 752 (2000).

The defendant also claims that the plaintiff ignored its own regulations by not submitting a new application to complete the subdivision. The defendant, however, failed to cite the text of the relevant regulation and has provided no law or analysis with respect to this claim. "We are not required to review issues that have been improperly presented to this court through an inade-quate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but there-after receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citations omitted; internal quotation marks omitted.) *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn.

App. 657, 659 n.2, 778 A.2d 237 (2001). We therefore deem abandoned that aspect of the defendant's claim regarding the plaintiff's regulations.

B

The defendant also claims that the court concluded improperly that the defendant was not prejudiced by the plaintiff's failure to give it timely notice of the breach of contract. We disagree.

Judge Allen made the following findings of fact that are necessary for our resolution of this claim. The plaintiff's zoning commission approved the principal's application for a subdivision for a period of seven years pursuant to § 8-26c (d), which provides in relevant part that "any subdivision approval made under this section on or before October 1, 1991, shall expire not more than seven years from the date of such approval." The subdivision approval was for seven years, until at least October 3, 1995.[9] The amount of the bond required by the plaintiff's engineer was $590,000, which included a 20 percent inflationary contingency. The defendant accepted payment of a premium to accept the risk associated with the bond. In December, 1990, the commission reduced the amount of the bond because some of the improvements had been made.

In support of its claim that it was prejudiced by the plaintiff's untimely notice, the defendant looks to language in the bond and two of the plaintiff's regulations. The defendant quotes the following language in the bond to support its claim that the bond expired on November 1, 1990. "The condition of this obligation is such that if the above bounden Principal shall within two (2) years . . . make the aforesaid improvements

---

[9] In answering the amended complaint, the defendant stated that "Commercial Union admits Southington sent a letter dated April 7, 1995, alleging improvements had not been completed and requested payment under the Bond."

. . . then this obligation to be void; otherwise, it shall remain in full force and effect. . . ." The defendant also relies on §§ 4-08.1[10] and 4-08.2[11] of the zoning regulations of the town of Southington to support its claim that the bond expired in two years. Specifically, the defendant reads together the following language from two different subsections of the regulations. "In computing the estimated cost of all public improvements, the Town Engineer shall add a percentage not exceeding 20 [percent], to cover inflationary costs, contingencies, and administrative or other costs to the Town in case of default. . . ." Southington Zoning Regs., § 4-08.1. "No bond shall be accepted for a period exceeding two years unless it contains a provision for reviewing the amount of the bond annually with regard to inflation. . . ." Id., § 8-04.2. The defendant's position apparently is that the bond expired after two years because it did not contain the 20 percent inflationary

---

[10] Section 4-08.1 of the Southington zoning regulations provides: "Before approval is granted under this section, the applicant shall file a surety bond of a corporate surety company licensed to do business in the State of Connecticut with the Commission in a form satisfactory to the Town Attorney and in an amount recommended by the Town Engineer and approved by the Commission as sufficient to guarantee completion of all public improvements specified by the Commission and in conformity with the provisions of these Regulations. In computing the estimated cost of all public improvements, the Town Engineer shall add a percentage not exceeding 20 [percent], to cover inflationary costs, contingencies, and administrative or other costs to the Town in case of default. The Commission may accept assurance, in writing, from each of the utility companies whose facilities are proposed to be installed in the subdivision, in lieu of bond. A certified check or passbook made payable to the Town, OR IRREVOCABLE LETTER OF CREDIT, IN FAVOR OF THE TOWN, may be accepted in lieu of a surety bond as required above."

[11] Section 4-08.2 of the Southington zoning regulations provides: "No bond shall be accepted for a period exceeding two years unless it contains a provision for reviewing the amount of the bond annually with regard to inflation. In the event the subdivider shall fail to install all improvements within two (2) years from the date of approval, the term of the performance bond may be extended by the Commission upon request of the developer and subject to the receipt of an agreement of such extension by the surety. However, such extension shall not exceed a period of three (3) years."

provision and therefore the plaintiff was required to inform it that the principal was in default on November 1, 1990. The defendant cites another of the plaintiff's regulations, which provides in relevant part that "if, after due notice, the improvements for which the bond has been posted have not been fully completed within the time limit established in the bond . . . notices shall be sent to the developer and the bonding company"; id., § 4-08.8; advising the principal and the surety of the default.

Under our plenary standard of review of contracts, we conclude that the bond does not contain a time limitation. The language is clear and unambiguous that if the principal completes the improvements within two years, the defendant's obligation is void. If the improvements, however, are not completed, the obligation remains in full force and effect. It is an open-ended contract written by the defendant. Because the bond was drafted by the defendant,[12] it must be construed against the defendant. See *Brookfield* v. *Greenridge, Inc.*, supra, 177 Conn. 535. Courts will not torture the plain meaning of words to obtain the result a party may desire. See *Rumbin* v. *Utica Mutual Ins. Co.*, supra, 254 Conn. 286.

Furthermore, the facts of this case, including the actions of the defendant's agents, are contrary to the defendant's argument that the bond expired on November 1, 1990. During a discovery deposition, Sebastian Rodo, attorney in fact for the defendant, testified that the bond was open-ended and had no expiration date. By date of May 1, 1992, the defendant sent the plaintiff a general form status inquiry concerning the subdivision completion. The defendant was informed that the subdivision was not completed. Judge Allen found, and the record supports her finding, that the town engineer

---

[12] The defendant provided its standard form onto which the details of a particular surety agreement were typewritten.

incorporated a 20 percent contingency in the bond requirements. In addition, the commission reviewed the adequacy of the bond in December, 1990, at the request of the principal to reduce the amount of the bond. The commission in fact reduced the amount of the bond. We conclude that the defendant was not prejudiced by the plaintiff's failure to inform it in November, 1990, that the principal had not completed the improvements to the subdivision.

## III

The defendant's third claim is that the court improperly failed to apply the law of the case to the count in the plaintiff's amended complaint sounding in contract. We do not agree.

When an appellate court reviews a claim of failure to apply the law of the case, we first look at the rulings of the different trial courts to determine the standard applicable to each of the rulings of the court. *McCutcheon & Burr, Inc.* v. *Berman,* 218 Conn. 512, 526, 590 A.2d 438 (1991). If the standards are different, then the law of the case does not apply. "From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. *Breen* v. *Phelps,* [186 Conn. 86, 100, 439 A.2d 1066 (1982)]." (Internal quotation marks omitted.) *McCutcheon & Burr, Inc.* v. *Berman,* supra, 525.

The plaintiff's original complaint was in one count seeking payment under the performance bond. The complaint identified AMI as the applicant for the subdivision, and the commission required AMI to post a bond to ensure the completion of the improvements. A copy of the performance bond was attached to the complaint. The defendant filed a motion to strike the complaint, claiming that the complaint failed to state a cause of

action because "the bond principal has no obligation to Southington to complete the improvements which are the subject of this action." The court, *Arena, J.*, granted the motion to strike on October 2, 1995. The plaintiff pleaded over; see Practice Book § 10-44; and filed an amended complaint in four counts. In the first count, the plaintiff pleaded over the stricken count, including, but not limited to, adding the following paragraph: "At some point between October 4, 1988 and November 1, 1988, the exact date being unknown to plaintiff at this time, A.M.I. assigned or otherwise transferred its interest in the Subdivision to Michael J. Martinez ('Martinez'). Martinez was then the President, sole director and shareholder of A.M.I." The defendant filed an answer and special defense to the amended complaint on April 12, 1996, without again challenging the legal sufficiency of the contract count. The defendant thus waived its right to challenge the legal sufficiency of the amended pleading. See Practice Book § 10-7.

In trying the case, Judge Allen found that AMI was required to post the bond, that Martinez was the president, sole shareholder and director of both AMI and MJM, and that the defendant issued the bond for the purposes contained in it. Also, Martinez was known to the defendant as a contractor, and the defendant knew that he was operating his affairs through AMI. Judge Allen concluded that by posting a bond with the defendant, Martinez bound his heirs, successor and assigns, as principals, and the defendant as surety, to complete the improvements. The court also concluded that § 8-25 does not specify which party is eligible or required to post a subdivision bond. The court also concluded that the defendant was well aware of the risk that it was undertaking. Judge Allen concluded that the plaintiff had proved its case.

The defendant claims that Judge Allen reconsidered a legal issue decided by the granting of its motion to

strike the original complaint. This argument is flawed. The defendant wholly overlooks the fact that the plaintiff pleaded over by alleging additional facts in its breach of contract count in the amended complaint, allegations that the defendant did not challenge. See Practice Book § 10-44; *McCutcheon & Burr, Inc.* v. *Berman,* supra, 218 Conn. 528 (ability to amend after motion to strike). Furthermore, the defendant has misconstrued the law of the case doctrine as it applies to the facts here.

"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . [I]t expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, *in the absence of some new or overriding circumstance.*" (Citations omitted; emphasis added.) *Breen* v. *Phelps,* supra, 186 Conn. 99. Even if we assume for the sake of argument that the motion to strike was granted properly, the defendant fails to consider the overriding circumstance that the plaintiff repleaded its breach of contract count, and the defendant filed an answer and special defenses thereto. We therefore conclude that the court did not improperly fail to follow the law of the case, as Judge Allen determined whether the plaintiff had proved its contract count, not whether the allegations stated a cause of action.

IV

The defendant's next claim is that the court improperly concluded that the plaintiff met its burden of proof on the contract and negligence counts of its complaint. With respect to the contract count, the defendant claims

that Judge Allen made no finding that Martinez was either an assignee or successor in interest to the subdivision. The defendant also claims that the plaintiff failed to prove that Martinez ever owned the subdivision or that AMI assigned its interest in the subdivision to Martinez. We are not persuaded.[13]

We note again that the trial court's findings of fact are binding on this court unless we determine that they are clearly erroneous. See *Lussier* v. *Spinnato*, supra, 69 Conn. App. 141. We must determine whether the court's legal conclusions are legally and logically correct and find support in the facts found by the court. See *State* v. *Miller*, supra, 67 Conn. App. 547.

Section 8-25 requires only that a bond shall be provided; it does not state who shall provide the bond. The bond states that Martinez bound himself, his heirs, executors, administrators, successors and assigns to the plaintiff with respect to a subdivision application concerning Captain Lewis Drive. There was ample evidence before the court to support Judge Allen's finding that Martinez was doing business as AMI and that he was the president, sole director and sole shareholder. The defendant knew how Martinez conducted his affairs, as he was well known to it as a contractor. Martinez negotiated the purchase of the subdivision land and caused the subdivision application to be filed by one of his employees. Martinez applied for the bond on November 1, 1988. On February 8, 1989, after the bond was posted, MJM acquired title to the subdivision. Martinez was the president and sole stockholder of MJM. AMI undertook the subdivision improvements.

On the basis of our review of the record, we conclude that there was ample evidence before the court that

---

[13] Because we conclude that the court properly rendered judgment on the plaintiff's breach of contract count, we need not reach the defendant's claim that the court improperly rendered judgment on its negligence count.

Martinez conducted his business affairs under different corporations as it suited his needs. He negotiated the acquisition of the land and the subdivision approval. Regardless of the fact that MJM acquired title to the land after the subdivision was approved and the bond was posted does not change that fact that the defendant knew the purpose of the bond when it posted it and assumed the risk contained therein. We further conclude that the court's findings were not clearly erroneous, and we do not have the impression that a mistake has been made. We cannot say that the court's conclusions were illogical or not supported by the facts.

V

The defendant also claims that the court improperly awarded damages because it failed to conclude (1) that the plaintiff was required to complete the subdivision improvements before making a claim, (2) that the defendant was entitled to a refund for funds not expended by the plaintiff, (3) that the plaintiff's proof was insufficient in that it did not establish the date of the breach and the costs of completing the improvements on that date, (4) that for equitable reasons, pursuant to § 52-238 (a), no damages were due the plaintiff and (5) that the plaintiff's evidence of the cost of completing the improvements was speculative. The defendant's claim challenges Judge Allen's finding that the cost of completing the improvements to the subdivision as of October 1, 1997, was $175,000 and her award to the plaintiff of damages in that amount.

"[T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico,* 251 Conn. 59, 90, 752 A.2d 1037 (1999); see also *Lyons* v. *Nichols,* 63 Conn. App. 761, 767, 778 A.2d 246, cert. denied, 258

Conn. 906, 782 A.2d 1244 (2001). On the basis of our review of the transcript and the briefs of the parties, we conclude that Judge Allen did not abuse her discretion in awarding the plaintiff $175,000 and that the defendant's claims are without merit.[14]

A

First, the defendant claims that the plaintiff was required to complete the subdivision improvements before making a claim on the bond. The defendant, however, has failed to provide a legal analysis with authority for this claim. In a footnote, however, the defendant claims that the performance bond at issue here is a so-called indemnity bond rather than a completion bond. The trial court made no such finding and did not explain why the distinction was relevant to the regulations. We will not make that factual determination here. See *Blatt* v. *Board of Assessment Appeals*, 63 Conn. App. 512, 515, 776 A.2d 1187 (2001). Because the defendant's claim received only cursory attention in its brief, we do not consider it. See *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, supra, 63 Conn. App. 659 n.2.

B

Second, the defendant claims that it was entitled to a refund for damages that the plaintiff did not expend

---

[14] At this point, it bears noting that "[l]egal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue] . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one. . . .

"Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." (Citations omitted; internal quotation marks omitted.) *State* v. *Pelletier*, 209 Conn. 564, 567, 552 A.2d 805 (1989); *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 527 n.3, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999).

to complete the subdivision. The defendant's claim is based on the evidence that it presented at trial that it had a contractor who was willing to complete the subdivision at a cost of $110,575 in contrast to the testimony of the plaintiff's engineer that the cost of completion was $175,000. The defendant argues that there was nothing to stop the plaintiff from entering into an agreement with the contractor to complete the subdivision at the lower price. The basis of this claim is entirely speculative, and such assertions are insufficient to prevail on appeal. See *Baugher* v. *Baugher*, 63 Conn. App. 59, 69, 774 A.2d 1089 (2001). Furthermore, the case law cited by the defendant is again from New York. The defendant again failed to provide a copy of the relevant New York statutes. The statutes provided by the plaintiff, if applicable, demonstrate that the New York statutes do not conform to § 8-26c (b) or (c). See footnote 8. We therefore conclude that the court's award was not clearly erroneous as claimed by the defendant.[15]

C

The defendant's third claim is that the plaintiff's proof was insufficient in that it did not establish the date of the breach.[16] The simple answer to this claim is that the defendant's counsel stipulated on the record during the second day of trial that damages should be assessed as of October 1, 1997.

[15] The defendant also claims that the plaintiff may not make a profit at its expense. In essence, the defendant claims that the plaintiff will make a profit by selling the lots in the subdivision. The argument is based on speculation, as Judge Allen made no finding that the town would profit from its acquisition and sale of the lots. Judge Rittenband found that the plaintiff paid $352,450 for the land and, as of October 1, 1997, had sold four of the lots at an average of $40,000 per acre. As of that time, the plaintiff's profit was $54,338, which Judge Rittenband found was not sufficient to complete the subdivision improvements.

[16] As part of this claim, the defendant also claims that there was insufficient evidence concerning the costs of completing the improvements on that date. We address this claim in part V E.

"Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them. . . . To the extent that they dispense with evidence, they are similar to facts judicially noticed. . . . A party is bound by a concession made during the trial by his attorney." (Citations omitted; internal quotation marks omitted.) *Cole* v. *Planning & Zoning Commission*, 30 Conn. App. 511, 513–14, 620 A.2d 1324 (1993).

## D

The defendant claims that the court improperly failed to conclude that for equitable reasons, pursuant to § 52-238 (a),[17] no damages were due the plaintiff. The defendant's argument is unavailing.

The defendant presents this argument as a catch-all on the basis of its previously addressed claims. The defendant's primary argument is that the plaintiff will make a profit on the sale of the lots. This argument is entirely speculative, as there was no finding by either Judge Allen or Judge Rittenband that the plaintiff has been able to sell the lots at the enormous profit speculated by the defendant or that the plaintiff has been able to sell enough lots to pay for the completion of the subdivision improvements.

## E

The defendant's final claim is that there was insufficient evidence concerning the cost to complete the improvements in the subdivision and that the plaintiff's

---

[17] General Statutes § 52-238 (a) provides: "In any action on a penal bond, containing any condition which has been broken, such damages only shall be assessed as are equitably due, and judgment shall not be rendered for the whole penalty, unless it appears to be due."

evidence of the cost of completing the improvements was speculative. We do not agree.

The substance of the defendant's claims is an attack on Judge Allen's findings of fact, including the credibility of the witnesses. "The assessment of damages is peculiarly within the province of the trier and the award will be sustained so long as it does not shock the sense of justice. The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages." (Internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 174–75, 530 A.2d 596 (1987). "In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Internal quotation marks omitted.) *L.F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). "[C]redibility is a matter for the trier of fact to determine. In a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *State* v. *Nelson*, 67 Conn. App. 168, 179, 786 A.2d 1171 (2001).

At trial, the defendant presented testimony from Doran Deckert, president of Apple Valley Excavating, who estimated that the cost of completing the work was $110,575 on the basis of his review of the punch list and the site plan. Anthony Tranquillo, the town engineer, testified for the plaintiff and estimated, on

the basis of his inspection of the property and development of a punch list, that the cost to complete the improvements was $175,000. On the basis of the evidence, we cannot conclude that the court's damages award was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.