[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Carmel Hollow Associates Limited Partnership, appeals from the denial of its application for forest land and farm land classification by the defendant Town of Bethlehem's Board of Assessment Appeals. The plaintiff appeals to this court pursuant to General Statutes §§ 12-117a and 12-119, and seeks a reduction in valuation for the Grand Lists October 1, 1999, October 1, 2000 and October 1, 2001. The plaintiff further seeks an award of the overpayment of taxes, with interests and costs.
Although the plaintiff appeals from both the forest land and farmland classification denials, the primary issue in this case is whether a town assessor may declassify land classified by the Bureau of Forestry as forest land under § 12-107d based on the assessor's conclusion that the use of unsold lots in the subdivision has changed solely because one or more lots have been sold. (Pl's br. 1).
The case went to trial on July 29, 2002. At the trial the parties presented the court with an extensive stipulation of facts and exhibits, and two witnesses testified. The plaintiff called H. Sean Mathis, its president, and the defendant called its assessor, Carolyn Nadeau. The parties submitted simultaneous post trial memoranda on August 29, 2002.
Based upon the stipulation of facts and the undisputed and credible testimony at trial, the following facts are established. In 1986, the plaintiff obtained approval of subdivision plans for fourteen building lots on approximately 91.47 acres, along with approximately 13.6 acres of open space. In 1988, the plaintiff obtained approval of subdivision plans for seven building lots on approximately 39.72 acres, along with approximately 5.9 acres of open space. The two subdivisions (Carmel I and Carmel II, respectively) abut each other.
On October 18, 1990, the Bureau of Forestry of the Connecticut Department of Environmental Protection approved the plaintiffs CT Page 12965 application to designate approximately 106 acres of Carmel I and Carmel II as forest land as allowed under General Statutes § 12-107d. Soon after October 30, 1990, the Bethlehem assessor approved the plaintiffs application to classify approximately twenty five acres of Carmel I as farmland under General Statutes § 12-107c. For the 1990 Grand List all of Carmel I and Carmel II was classified as farm or forest land, and the total assessed value of the entire acreage was $20,390.
In 1994, 1997 and for each year from 1997 to the present, the plaintiff sold lots from Carmel I and Carmel II. At the time of trial, the plaintiff continued to own four lots from Carmel I and six lots from Carmel II. of the entire twenty two lots[1], fifteen are the subject of this appeal. All the parcels still owned by the plaintiff are unchanged in actual use.
In 1998 and 1999, the defendant sent out notices regarding a new policy for classification of land within a subdivision. The plaintiff reapplied for its unsold lots to be treated as farmland or forest land on the 1999 Grand List. That application was denied. The plaintiffs appeal from that denial to the Board of Assessment Appeals was denied on April 6, 2000.
In the appeal from action by the defendant's Board of Assessment Appeals under § 12-117a, the court's role is well established.
 The trial court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the taxpayer's property. At the de novo proceeding, the taxpayer bears the burden of establishing that the assessor has over assessed its property. The trier of fact must arrive at his own conclusions as to the value of the taxpayer's property by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value. If the trial court finds that the taxpayer has failed to meet his burden because, for example, the court finds unpersuasive the method of valuation espoused by the taxpayer's appraiser, the trial court may render judgment for the town on that basis alone.
(Internal citations omitted; internal quotation marks and brackets omitted.) Union Carbide Corp. v. City of Danbury, 257 Conn. 865, 770
(2001). CT Page 12966
As to the claims under General Statutes 12-119, the law is clear that these are not appeals from the board of assessment appeals. The statute provides two different grounds for attacking the validity of the assessments. The statute is entitled, Remedy when property wrongfullyassessed, and reads:
 When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated.
 Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court.
Thus the grounds are separate from those raised in an appeal under12-117a and require the plaintiff to bear a heavier burden.
In contrast to § 12-117a, which allows a taxpayer to challenge the assessor's valuation of his property, § 12-119 allows a taxpayer to bring a claim that the tax was imposed by a town that had no CT Page 12967 authority to tax the subject property, or that the assessment was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property. . . . [A] claim that an assessment is excessive is not enough to support an action under this statute.
(Emphasis in original; footnote omitted; internal quotation marks omitted.) Pauker v. Roig, 232 Conn. 335, 339-40 (1995).
In this appeal, the plaintiff is alleging excessive valuation under General Statutes § 12-117a and wrongful assessment under General Statues § 12-119 for each of the fifteen lots it owned at the time of the assessment for the 1999 Grand List. As to the plaintiffs claim regarding farm land classification, it has not met its burden of proof by a preponderance of the evidence. The evidence did not persuade the court that, in light of the lots sold containing farm land, there should have been more than 22.53 acres classified as farm land. The court finds for the defendant as to the claims for farm land classification under both §§ 12-117a and 12-119.
Turning to the crux of the appeal, the court first examines the statutory scheme providing for the designation and classification of forest land. In General Statutes § 12-107a, the legislature has set forth the public policy behind the statutory scheme:
 It is hereby declared (a) that it is in the public interest to encourage the preservation of farm land, forest land and open space land in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state, to conserve the state's natural resources and to provide for the welfare and happiness of the inhabitants of the state, (b) that it is in the public interest to prevent the forced conversion of farm land, forest land and open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land, forest land and open space land, and (c) that the necessity in the public interest of the enactment of the provisions of sections 12-107b to 12-107a, inclusive, is a matter of legislative determination.
CT Page 12968
Unlike farm land, forest land is not designated by the town assessor but by the state forester of the bureau of forestry of the Department of Environmental Protection. The statute authorizing the designation and classification is General Statutes § 12-107d, as amended byP.A. 01-195. It reads,
(a) An owner of land may file a written application with the State Forester for its designation by the State Forester as forest land. When such application has been made, the State Forester shall examine such application and, if the State Forester determines that it is forest land, said forester shall issue a triplicate certificate designating it as such, and file one copy of such certificate in the State Forester's office, furnish one to the owner of the land and file one in the office of the assessor of the municipality in which the land is located.
(b) When the State Forester finds that it is no longer forest land, the State Forester shall issue a triplicate certificate cancelling the designation of such land as forest land, and file one copy of such certificate in the State's Forester's office, furnish one to the owner of the land and file one in the office of such assessor.
(c) An owner of land designated as forest land by the State Forester may apply for its classification as forest land on any grand list of a municipality by filing a written application for such classification with the assessor thereof not earlier than thirty days before or later than thirty days after the assessment date and, if the State Forester has not cancelled the designation of such land as forest land as of a date at or prior to the assessment date such assessor shall classify such land as forest land and include it as such on the grand list. provided in a year in which a revaluation of all real property in accordance with section 12-62 becomes effective such application may be filed not later than ninety days after such assessment date in such year.
(d) An application to the State Forester for designation of land as forest land shall be made upon a form prescribed by the State Forester and approved CT Page 12969 by the Commissioner of Environmental Protection and shall set forth a description of the land and such other information as the State Forester may require to aid in determining whether such land qualifies for such designation. An application to an assessor for classification of land as forest land shall be made upon a form prescribed by such assessor and approved by the Commissioner of Environmental Protection and shall set forth a description of the land and the date of the issuance by the State Forester of the certificate designating it as forest land and a statement of the potential liability for tax under the provisions of sections 12-504a to 12-504e, inclusive.
(e) Failure to file an application for classification of land as forest land within the time limit prescribed in subsection (c) and in the manner and form prescribed in subsection (d) shall be considered a waiver of the right to such classification on such assessment list.
(f) The municipality within which land designated as forest land by the State Forester is situated or the owner of land which the State Forester has refused to designate as such may appeal from the decision of the State Forester to the superior court for the judicial district within which such municipality is situated. Such appeal shall be taken within as forest land or the refusal to issue such certificate, as the case may be, and shall be brought by petition in writing with proper citation signed by competent authority to the adverse party at least twelve days before the return day. The Superior Court shall have the same powers with respect to such appeals as are provided in the general statutes with respect to appeals from boards of assessment appeals.
(g) An owner of land aggrieved by the denial of any application to the assessor of a municipality for classification of land as forest land shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals.
CT Page 12970
(Emphasis added.)
As is evidenced by the emphasized language in subsection (c), unless the forester has cancelled the designation of forest land, the assessor "shall" classify the land as such. There is nothing before this court to suggest that the state forester cancelled the forest land designation as to any of the property owned by the plaintiff on October 1, 1999.
The defendant argues that the assessor had the authority to declassify the plaintiffs forest land for several reasons. First, it claims that because the plaintiffs 1990 application to the state forester was misleading, the state forester made an erroneous designation. It also argues that none of lots owned by the plaintiff in 1990 falls within the definition of forest land under General Statutes § 12-107b (b). Finally, it argues that defendant now has the authority to treat the active marketing of the plaintiffs lots as a change of use under General Statutes § 12-504h.
"As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." (Internal quotation marks omitted.) Wislocki v. Prospect, 72 Conn. App. 444, 449 (2002). "The purpose of statutory construction is to give effect to the intended purpose of the legislature. . . . If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Internal quotations marks omitted.) Id.; quoting State v. DeFrancesco,235 Conn. 426, 435 (1995).
"[C]ommon sense must be used in statutory interpretation, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) Southington v.Commercial Union Insurance Company, 71 Conn. App. 715, 731 (2002).
The clear language of the statute provides that as to forest land, the state forester and not the assessor, determines the designation. SeeTimber Trails Associates v. New Fairfield, 226 Conn. 407, 417 (1993). Accordingly, the defendant's arguments justifying its declassification of the plaintiffs property as forest land must fail. The claims of a misleading application or of an erroneous designation or of a change of use under § 12-504h must be directed to the state forester. Because this was not done, the defendant's actions in declassifying the forest land and computing an assessment based on that declassification resulted in an excessive assessment and disregarded the statutory provision for determining valuation, specifically, § 12-107d. CT Page 12971
The plaintiff's appeal is sustained in part and dismissed in part. The court finds that the assessments of the plaintiffs property on the Grand List of October 1, 1999 and subsequent Grand Lists is invalid because it was wrongfully assessed under General Statutes § 12-107d and is therefore manifestly excessive. The court does not find that the plaintiffs property was wrongfully assessed under § 12-107c. Therefore, the court orders the valuation of the plaintiffs property be reduced to 70% of its true and actual value with the property assessed as forest land pursuant to § 12-107d for the October 1999 grand list and subsequent grand lists.
Specifically, the court finds the following values as to the property assessed as forest land:
 Carmel Hollow I — Lot 13 — $921.60 Carmel Hollow I — Lot 14 — $1,000.80 Carmel Hollow II — Lot 1 — $490.80 Carmel Hollow II — Lot 3 — $487.20 Carmel Hollow II — Lot 4 — $480.00 Carmel Hollow II — Lot 5 — $710.40 Carmel Hollow II — Lot 6 — $603.60 Carmel Hollow II — Lot 7 — $787.20
As to the remaining lots of Carmel Hollow I, namely 1, 3, 5, 7, 8, 11 and 12, the court finds that the values must reflect the portions of forest land in each lot as follows:
 Lot 1 — 3.75 acres x 120 — $450.00 Lot 3 — 4.80 acres x 120 — $576.00 Lot 5 — 4.06 acres x 120 — $487.20 Lot 7 — 2.66 acres x 120 — $319.20 Lot 8 — 8.32 acres x 120 — $998.40 Lot 11 — 5.35 acres x 120 — $642.00 Lot 12 — 5.40 acres x 120 — $648.00
The court further orders that the defendant refund the plaintiff the amount of any overpayment in taxes, with interest and costs.
 ___________________ DiPentima, J.