[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Arvin Gregory Builders (hereinafter AGB), is a general partnership organized under the laws of the state of Connecticut. (Appeal ¶ 1.) The (defendants are the planning commission of the town of Brookfield and the Candlewood Shores Tax District (District).[1] The property is located in an R-7 residential zoning district. (Return of Record [ROR], Item 1, p. 16.) On January 18, 2001, AGB, by way of a letter with attached maps, filed an application requesting the commission to approve for filing AGB's maps showing the "combination of lots seven, nine, and eleven to form a new lot A, and lots thirteen and fifteen to form a new lot B" pursuant to Brookfield zoning regulations § 3038B.[2] (ROR, Item 1, p. 1.) At a November 15, 2001 commission meeting, the commission voted to deny AGB's application. (ROR, Item 61, p. 3.) AGB timely commenced this appeal on November 26, 2001, challenging the commission's decision.
General Statutes § 8-8 (b) provides in pertinent part that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) Harris v. Zoning Commission,259 Conn. 402, 409, 788 A.2d 1239 (2002). General Statutes § 8-8
(a) (1) provides in relevant part: "[An] "aggrieved person . . . includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." Aggrievement is a factual issue, "and credibility is for the trier of the facts." (Internal quotation marks omitted.) Quarry Knoll II Corp. v.Planning Zoning Commission, 256 Conn. 674, 703, 780 A.2d 1
CT Page 944 (2001). An owner of property that is the subject of an application is aggrieved for the purpose of bringing an appeal and a plaintiff may prove aggrievement at the time of trial; Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953
(1991); or "by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) Quarry KnollII Corp. v. Planning Zoning Commission, supra, 703.
In the present appeal, AGB alleges statutory aggrievement as the owner of the property affected by the commission's decision. (Appeal, ¶ 3.) The record contains a quitclaim deed, dated April 22, 1992, and recorded in the Brookfield land records in Volume 252, Page 701-03, which conveys to AGB, in part, lots seven, nine, eleven, thirteen, and fifteen, the lots at issue in this appeal, in section two of the Oakridge area in the Candlewood Shores subdivision. (Appeal, ¶ 3; Exhibit 1.) The court finds, therefore, that AGB has sufficiently alleged and proven aggrievement.
Notice of decisions of a planning commission is generally governed by General Statutes § 8-28, which provides that "[n]otice of all official actions or decisions of a planning commission . . . shall be published in a newspaper having a substantial circulation in the municipality within fifteen days after such action or decision. Any appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8."
General Statutes § 8-8 (b) provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e), now subsection (f), provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
An affidavit of publication discloses that the commission's decision, denying AGB's application for lot line revisions, was published in The News Times on November 20, 2001. (ROR, Item 30.) This appeal was commenced by service of process on the town clerk, Barbara Hope, and the acting secretary for the commission, Theresa Tavares, on November 21, 2001; and on Robert Miller, the chairman of the commission, on November 26, 2001. Accordingly, the appeal was commenced in a timely fashion by service of process on the proper parties. CT Page 945
"The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Citations omitted; internal quotation marks omitted.) Huck v.Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40,525 A.2d 940 (1987). "[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Id., 541. "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 206, 658 A.2d 559 (1995). "The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal." R R Pool Patio v. Zoning Board of Appeals, 257 Conn. 456, 470, 778 A.2d 62
(2001). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. " (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals,228 Conn. 785, 791, 639 A.2d 519 (1994).
"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision. . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citation omitted; internal quotation marks omitted.)Harris v. Zoning Commission, supra, 259 Conn. 420. "The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action. " (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208. "[C]ases in which we have held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency couples its communication of its ultimate decision with express reasons behind that decision. " Harris v. Zoning Commission, supra, 420-21.
The minutes of the commission meeting; (ROR, Item 61, p. 3.); and a letter of notification of decision from the commission to AGB; (ROR, Item CT Page 946 28.); reveal that the reasons given by the commission in the unanimous vote denying AGB's application were "due to the question of the road, and that the Commission feels at this time without seeing the whole picture and per Article 6 of Section 234-601 of the Regulations, that the required completion of the subdivision is not being met."[3]
Accordingly, the commission issued a "formal collective statement of reason for its actions." Bloom v. Zoning Board of Appeals, supra,233 Conn. 208.
As set forth above, the commission denied the plaintiffs application for a lot line adjustment to combine "lots seven, nine, and eleven to form a new lot A, and lots thirteen and fifteen to form a new lot B." The proffered reasons for the denial were "due to the question of the road, and that the Commission feels at this time without seeing the whole picture and per Article 6 of Section 234-601 of the Regulations, that the required completion of the subdivision is not being met." (ROR, Item 61, p. 3.)
AGB appeals on the basis that the commission acted illegally, arbitrarily, and in abuse of its discretion in that: (a) the lots are exempt from § 234-308B of the Brookfield subdivision regulations pursuant to General Statutes § 8-28b[4] and the commission lacks authority to regulate the combination of lots pursuant to General Statutes § 8-25; (b) AGB's application is not a resubdivision as defined in General Statutes § 8-18. The commission was, therefore, required to stamp the plaintiff's maps "approved for filing; "(c) the commission abused its discretion by basing its decision on the condition of the road; and (d) the commission ignored its own precedent of not requiring commission approval for combining lots in the Candlewood Shores subdivision.
The Candlewood Shores subdivision was originally approved in 1950-1951 by the New Fairfield planning commission. (ROR, Item 24, pp. 12-14.) Thereafter, the General Assembly transferred Candlewood Shores from the town of New Fairfield and annexed it to the adjacent town of Brookfield. (ROR, Item 24, pp. 12-14.) Property owners in Candlewood Shores became dissatisfied with the developer's maintenance of the roads within the subdivision and formed the Candlewood Shores Tax District which, in 1986, purchased all the common areas at Candlewood Shores to take on the responsibility of road maintenance. (ROR, Item 24, p. 18.) In 1999, the town of Brookfield affirmed that Candlewood Shores is an approved subdivision. (ROR, Item 24, pp. 10-1 1.)
 I CT Page 947
AGB first argues that pursuant to General Statutes § 8-26a (a), it is exempt from the Brookfield subdivision regulations § 234-308B, because AGB's lots were approved as part of Candlewood Shores subdivision prior to its enactment. The commission argues that § 8-26a (a) simply provides protection for uses that become nonconforming due to a change in the regulations, and a subdivision is not required to comply with changes in the regulations on substantive issues such as area or bulk requirements, but must comply with procedural or jurisdictional issues.
When interpreting General Statutes § 8-26a (b), our Supreme Court has determined that "[u]nder Connecticut law, previously approved subdivisions are exempt from changes in zoning regulations." Harris v.Zoning Commission, supra. 259 Conn. 435. Section 8-26a (a) is substantially similar to § 8-26a (b), except that 8-26a (a) governs changes in subdivision regulations, rather than changes in zoning regulations.[5] Therefore, there is no reason why previously approved subdivisions should be treated any differently under § 8-26a (a) than under § 8-26a (b), when changes in subdivision regulations are made. See Derham v. Brown, Superior Court, judicial district of Hartford, Docket No. CV 99 0594305 (July 19, 2001, Peck, J.) (30 Conn.L.Rptr. 155). Section 8-26a (a) provides in pertinent part: "Notwithstanding the provisions of any general or special act or local ordinance, when a change in the subdivision regulations is adopted by the planning commission of any town . . . no subdivision plan which has been approved, prior to the effective date of such change shall be required to conform to such change." The original Candlewood Shores subdivision plan was approved by the New Fairfield planning commission in 1950-1951, prior to the enactment of the Brookfield subdivision regulations § 234-308B, and affirmed by the Brookfield planning commission as an approved subdivision in 1999. (ROR, Item 24, pp. 12-14.) This original plan, therefore, is exempt from any changes made in the subdivision regulations after its approval. AGB, however, has submitted revisions to the approved plan, and these revisions had not been approved prior to the enactment of § 234-308B. Although Candlewood Shores is an existing subdivision, § 234-308B was in effect when AGB submitted its lot revision map. Therefore, the lot revision map is required to comply with the Brookfield subdivision regulations.
AGB further argues that the commission abused its discretion when it denied AGB's application based on the road conditions because General Statutes § 8-25, the enabling statute, does not confer authority on the commission to combine lots and AGB is not obligated to repair the road. The commission argues that it has jurisdiction to determine if a proposal constitutes a resubdivision pursuant to General Statutes §8-26, as implemented by the town of Brookfield in its subdivision CT Page 948 regulations § 234-308B. The commission argues further that AGB's letter of application invoked the commission's jurisdiction, thereby acknowledging the commission's authority to render its determination. Moreover, the commission contends that the issue of which entity is responsible for the completion of roads is irrelevant because the question before the commission was to determine whether the proposal constituted a resubdivision.
"Section 8-25 gives municipalities the authority to approve or reject subdivision applications." Southington v. Commercial Union Ins. Co.,254 Conn. 348, 359, 757 A.2d 549 (2000). It "authorizes municipalities to oversee plans for subdivisions and sets forth the requirements for acquiring subdivision approval." Id., 365. Section 8-25 provides in pertinent part: "Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land." Section 8-26 provides in pertinent part: "The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter, provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations." The town of Brookfield subdivision regulations § 234-308B provides that "[n]o changes, modifications or revisions shall be made in any approved subdivision map unless authorized by the Commission. . . . In the event such change, modification or revisions constitute a resubdivision, an application for resubdivision must be filed with the Commission. . . . modifications or revisions do not constitute a resubdivision, it shall stamp `approved forfiling' on such map. " (Emphasis in original.) (ROR, Item 62, p. 21.)
General Statutes § 8-25 requires municipalities to promulgate regulations for approving subdivisions. Pursuant to § 8-25, the town of Brookfield adopted subdivision regulations, which authorize the commission to determine if "changes, modifications or revisions" made in any approved subdivision map constitute a resubdivision. Moreover, §8-26 authorizes the commission to determine whether it is addressing a subdivision or resubdivision. Thus, although AGB's application characterizes the proposal as lot line revisions, because these revisions will occur in an approved subdivision, the commission has the authority to determine if AGB's application involves a resubdivision.
 II
AGB next argues that the commission improperly determined that its proposal was a resubdivision because, even if § 234-308B applies to its lots, the proposal to combine lots is not a resubdivision or CT Page 949 subdivision within the meaning of General Statutes § 8-18. AGB contends that the proposal calls for only a minor lot line adjustment that decreases the number of lots by combining them, and that combining the lots does not affect the street layout or park area as depicted on the original Candlewood Shores subdivision map.
 A
AGB argues that its proposal is not a resubdivision within the meaning of General Statutes § 8-18 because its proposal is for only a minor lot line adjustment that decreases the number of lots and does not create an additional lot. The commission has not briefed this issue.
The Brookfield subdivision regulations defining subdivision and resubdivision are nearly identical to General Statutes § 8-18 which defines "subdivision" as "the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision; "resubdivision' means a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map . . ." "A minor lot line adjustment between two existing lots, whereby no new lot is created, does not constitute a "subdivision' as defined by § 8-18, and, thus does not require municipal approval."Goodridge v. Zoning Board of Appeals, 58 Conn. App. 760, 765-66,755 A.2d 329, cert. denied, 254 Conn. 930, 761 A.2d 753 (2000). This proposition is applicable here because § 8-18 includes a resubdivision within its definition of a subdivision. Id.; see also Derham v. Brown, supra, 30 Conn.L.Rptr. 159.
The record reveals the following. Candlewood Shores is an approved subdivision in the town of Brookfield. (ROR, Item 24 pp. 10-11.) AGB obtained the subject property by quitclaim deed on April 22, 1992. (Appeal ¶ 3; Exhibit I.) AGB's proposal seeks to combine five smaller adjacent building lots to form two larger building lots by eliminating the lot lines between lots nine and eleven and lots nine and seven, and dividing lot eleven to add a small portion of it to form Lot A; and by eliminating the lot lines between lots fifteen and thirteen and adding the remaining larger portion of lot eleven to proposed lot B. (ROR, Item 2; Item 3.) CT Page 950
AGB's proposal does not divide a parcel into three or more parts. Nor does the decrease in the size of lot eleven result in creating an additional building lot. Prior to AGB's proposal, five building lots existed in the approved Candlewood Shores subdivision. If the proposal was accepted, only two building lots would remain. Thus the proposed lot line adjustments between the five lots do not constitute a resubdivision within subsection (c) of the definition for "resubdivision" in General Statutes § 8-18. As will be discussed, however, AGB's proposal does fall under subsections (a) and (b) of the definition of "resubdivision" in General Statutes § 8-18.
 B
AGB argues that its proposal is not a resubdivision within the meaning of General Statutes § 8-18 because the proposal to combine the lots does not affect the street layout or park area as depicted on the original subdivision map. In support, AGB cites to Gomes v. CheshirePlanning Zoning Commission, 1996 WL 431822 (Conn.Super. July 10, 1996) (Booth, J.); and Cahill v. Old Saybrook Planning Commission, Superior Court, judicial district of Middlesex at Middletown, Docket No. 089791 (June 19, 2000, Arena, J.), for the proposition that the phrase in § 8-18 affects any street layout" means that which changes a physical location or schematic arrangement of the street on a subdivision map. (AGB's Brief, pp. 23-24.)
AGB contends that it emphasized to the commission that it was not proposing to "change Clearview Drive or the so-called park area from what is depicted on the original subdivision maps." (AGB's Brief, pp. 22-23.) To support its argument that it is not changing the physical location of the street, AGB points to its testimony before the commission that emphasizes it is not proposing to change the roads or park area as depicted on the approved subdivision map, and compares the facts in the present case to Superior Court decisions in which the court found no change in a street layout. AGB cites to Gomes v. Cheshire Planning Zoning Commission, supra, 1996 WL 431822, in which the court found that the proposed addition of two parking lots, alteration of a driveway and subsequent effect of doubling the road usage was not a proposal affecting the physical location of any street shown on the map or any area reserved for open space. In addition, AGB cites to Middlebury v. WatertownPlanning Zoning Commission, Superior Court, judicial district of Waterbury, Docket No. 130420 (April 14, 1997, Pellegrino, J.), in which the court held there was no resubdivision when a street was being extended to connect to another street. AGB contends that since "the existing road, Clearview Drive, provides access to the lots sought to be CT Page 951 combined without a need for a street extension, an easement or any other change in the physical location or schematic arrangement of Clearview Drive," it is not a resubdivision. (AGB's Brief, pp. 24-25.)
In opposition, the commission argues that it properly determined that the proposal constituted a resubdivision pursuant to § 8-18 because Candlewood Shores is an approved subdivision and AGB proposed two driveways coming off of cul-desacs on either end of the road, which would block the public access and affect the street layout. The commission contends that the facts in the present appeal are distinguishable from the facts in Gomes v. Cheshire Planning Zoning Commission, supra, 1996 WL 431822, "[s]ince the right-of-way as shown on the map will be blocked off entirely by the [proposed] driveways, the physical location of a street will be impacted, if not completely eliminated at that area" and AGB's "proposal to build private driveways affects the physical location of a street as shown on Map 146." (Commission's Brief, p. 17.) The commission further distinguishes the present appeal from the facts inMiddlebury v. Watertown Planning Zoning Commission, supra, Docket No. 130420. The commission argues that Middlebury is inapplicable because in that case the proposed change in the subdivision map was expected, as evidenced by a notation on the map itself, while here, at the time Candlewood Shores was originally approved as a subdivision, it was "anticipated and contemplated that the streets shown on the subdivision map would be completed." (Commission's Brief, p. 18.) The commission maintains that Bartocetti v. Denny, Superior Court, judicial district of New Haven, Docket No. 301390 (May 28, 1992, Hodgson, J.), is applicable. In Bartocetti, the court held that when a landowner within an approved subdivision proposed changing the designation of an area on the subdivision map labeled as reserved for use as a future road, it is a resubdivision. Id.
As stated earlier, § 8-18 provides that a "`resubdivision' means a change in a map of an approved or recorded subdivision or resubdivision if such change . . . affects any street layout shown on such map . . . [or] affects any area reserved thereon for public use. . . ." "Once an area is shown as a road or area reserved for public use on a recorded subdivision map, a resubdivision application must be filed to change it." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 10.9, pp. 216-17.
Although AGB represented to the commission that its proposal would not change any roads or the "so-called park area" as depicted on the approved subdivision map; (ROR Items 26, 69, pp. 2, 4.); the record indicates otherwise. AGB's testimony before the commission indicates that its proposal includes driveways to service lots A and B, at least one of which CT Page 952 extends from a cul de sac. (Supplemental Return of Record [SROR], Item 68, p. 8.) The record further indicates the following. The commission inspected the "proposed road, driveways, house locations and slopes" on a site walk. (ROR, Item 51.) At its initial meeting on AGB's application, the commission noted that it was "on record saying [the proposal] should be a resubdivision, which would require an application. " (ROR, Item 65, p. 2.) Thereafter, the commission consulted with the town attorney to assist with the interpretation of the town's regulations in relation to AGB's application. (ROR, Items 27, 11.) The town attorney observed that "this proposal seeks to replace a proposed private roadway with driveways servicing the homes to be built. . . ." (ROR, Item 27, p. 1.) Advisory letters to the commission reveal that the town attorney advised the commission that it had the discretion to determine whether AGB's proposal was a resubdivision and opined that the "change in the road layout alone" was sufficient for the commission to exercise its discretion and find that the proposal constituted a resubdivision. (ROR, Item 27, p. 2; Item 11, p. 2.)
Most significantly, a map submitted to the commission by AGB for its proposal to combine lots seven, nine and eleven to form lot A, and lots thirteen and fifteen to form lot B, depicts the road at issue, Clearview Drive, as ending in a cul de sac in front of lot seven, and encroaching over the elongated end point of a park. (ROR, Item 2.) The approved subdivision map depicts Clearview Drive as a thoroughfare, advancing beyond lot seven and through to lot seventeen, with a park area that bifurcates Clearview Drive and ends in an elongated point in front of lot five, before reaching lot seven. (ROR, Item 2.) The revisions to the proposed map thus depict a change in the physical street and park layouts of the approved subdivision plan; (ROR, Item 2.); and the commission reasonably could have concluded that the proposal was a resubdivision that must comply with the town's subdivision regulations in effect at the time the application was submitted. The evidence in the record supports the commission's denial of AGB's application based on a determination that AGB's proposal was a resubdivision within the meaning of General Statutes § 8-18 and the relevant Brookfield subdivision regulations, § 234-308B.
 III
AGB next argues that "[t]he Commission has no authority to denysubdivision approval, based upon the condition of the road, let alone thecombination of lots." (Emphasis in original.) (AGB's Brief, p. 26.) AGB contends that in light of Reed v. Planning Zoning Commission,208 Conn. 431, 544 A.2d 1213 (1988), where the court held that the commission could not deny a subdivision application on the ground that CT Page 953 the town road abutting and serving the property was inadequate for safe access, the commission in the present appeal cannot deny its application for lot line revisions based on the condition of the road. AGB further contends that it is not obligated to repair or improve any roads in the Candlewood Shores subdivision, including Clearview Drive, because the District is a quasi-municipal corporation governed by municipal corporation law and "the District was formed expressly to'. acquire, construct and maintain roads . . . in Candlewood Shores.'" (AGB's Brief, p. 28-29.)
In opposition, the commission argues that while it engaged in lengthy discussions regarding whether AGB had the responsibility to complete the roads, the commission nonetheless determined that AGB's proposal was a resubdivision subject to compliance with the town's subdivision regulations on the grounds that the proposal affected a street layout on the existing subdivision map, and the issue of who carries the responsibility of improving the road is not relevant to this appeal. (Commission's Brief, pp. 22-23.)
The court, in Reed v. Planning Zoning Commission, supra,208 Conn. 431, held that the commission could not deny a subdivision application on the ground that the town road abutting and serving the property was inadequate to provide safe access to the subdivision. The court's holding, however, was based on the proposition that the "planning commission, acting in its administrative capacity . . . has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved." (Citation omitted; internal quotation marks omitted.) Id., 433. In that case, the trial court had sustained the plaintiffs appeal because there was no subdivision regulation that prohibited the plaintiffs plan, thus rendering the commission's denial of the plan illegal. Id., 435. Accordingly, when a commission determines that an application to combine lots within a subdivision does not comply with the municipality's regulations or, as in this appeal, it determines that an application to combine lots in a subdivision is a resubdivision that does not comply with the regulations, it is within the commission's authority to deny the application.
As stated earlier, the record indicates that the commission considered AGB's proposal a resubdivision; (ROR, Item 65, p. 2.); and, in its decision it referenced a lack of compliance with the Brookfield subdivision regulations, including § 234-601. (ROR, Item 61, p. 3.) Brookfield subdivision regulations § 234-308B provides that if the commission determines that a change, modification or revision in an approved subdivision map constitutes a resubdivision, an application in CT Page 954 accordance with the subdivision regulations must be filed with the commission for review. Moreover, the record contains substantial evidence to support the commission's determination that AGB's proposal was a resubdivision based on a revision that affects a street layout in an approved subdivision map. Thus, the commission's denial based on the "question of the road" is not arbitrary, illegal or an abuse of its discretion. (Emphasis added.) (ROR, Item 61, p. 3.)
The court is satisfied that the record contains substantial evidence to support the commission's findings and the commission's denial of AGB's application based on "the question of the road, and that the Commission feels at this time without seeing the whole picture and per Article 6 of Section 234-601 of the Regulations, that the required completion of the subdivision is not being met." (ROR, Item 61, p. 3.) Accordingly, the commission's decision was not unreasonable, arbitrary or illegal. Because resolution of these issues is dispositive of the appeal, it becomes unnecessary to address AGB's final argument that the commission ignored "a clear precedent of not requiring property owners to obtain approval for combining lots in Candlewood Shores." (AGB's Brief, p. 30.)
AGB's appeal is, accordingly, dismissed.
 ___________________ Upson, J.